### WACH v. COE, Commissioner of Patents.
### No. 6252.

United States Court of Appeals for the District of Columbia.

Argued Dec. 11, 1934.

Decided March 25, 1935.

Clair W. Fairbank, of New York City, and Henry C. Parker, of Washington, D. C., for appellant.

T. A. Hostetler, Solicitor of the Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellant's bill, filed under the provisions of section 4915, R. S., as amended (35 USCA § 63), against the Commissioner of Patents, seeking to "authorize" the issuance of a patent to appellant.

Appellant's application was filed April 6, 1926, and on June 20, 1930, the three claims then in the application were finally rejected by the Principal Examiner. The rejection was affirmed by the Board of Appeals; whereupon the present suit was brought.

Of the three claims (Nos. 14, 15, and 16), claim 14 is illustrative, and reads as follows: "Means for driving a rotary shaft comprising a reciprocating engine direct connected with said shaft, a turbine engine, a fluid power transmitting device, reduced speed gearing between said turbine engine and one portion of said device, and reduced speed gearing between another portion of said device and said shaft."

According to the specification, the "invention relates to power plants in which the main power is derived from a reciprocating steam engine, and more especially consists in a novel arrangement and combination whereby the power of the reciprocating steam engine and the power of an exhaust steam turbine receiving its steam from the reciprocating engine are utilized for driving the same shaft."

It is an accepted fact that a turbine operated by the exhaust steam from a reciprocating steam engine adds materially to the power obtained from the fuel used to produce the steam. When steam expands under boiler pressure to condenser pressure, it expands approximately 200 times its previous volume. It is obviously impossible to utilize all this expansion in a reciprocating steam engine without having abnormally large cylinders. The only known device permitting practically unlimited expansion of the steam is the steam turbine. Consequently, after the steam has expanded in a reciprocating engine, the exhaust steam can be delivered to an exhaust steam turbine and the steam further expanded to produce additional power.

The idea of utilizing in a steam turbine the exhaust steam from a reciprocating engine and propelling a ship with the combined power of the engine and turbine was disclosed as early as 1901 by Parsons (United States patent, No. 712713), but he did not know how effectively to connect the engine and turbine to the same propeller

shaft. He therefore connected the exhaust steam turbine to one of the propeller shafts and connected the reciprocating engine to another propeller shaft. This arrangement was successful and was promptly utilized in a large number of ships having three or four propeller shafts and in which an exhaust turbine and a reciprocating steam engine drove separate shafts.

The success of the Parsons invention resulted in a demand for a power plant for use in ships having only one or two propeller shafts in which the power of exhaust steam could be applied to the propeller shaft already being driven by a reciprocating engine. The record discloses that about 90 per cent. of ocean-going vessels are of the one or two propeller type. The Parsons invention is adaptable only to ships having three or four propellers because of the necessity for a symmetrical distribution of power.

Two conditions caused difficulty in connecting a turbine to a reciprocating engine shaft. The engine runs at low speed, between 60 and 90 revolutions per minute; while the turbine, if efficient, must run at a very high speed, ranging from 2,500 to 7,000 revolutions per minute. In addition, a reciprocating engine has a widely varying torque. "Torque (according to the evidence) may be defined as the power which makes the shaft go around. In a reciprocating engine the torque is very uneven; and if you try to combine these two together without some form of adapting the unevenness of the one torque to the evenness of the other torque, something will break. The difficulty is, when one is running at a very much higher speed than the other, to combine these two by some means."

For almost a quarter of a century following the Parsons invention efforts were made by leading marine engineers of the world to connect the engine and turbine to the same propeller shaft, but without success. Swan-Hunter (British patent, No. 9963) in 1913 proposed to connect the exhaust steam turbine to the shaft of a reciprocating engine by using a Föttinger transformer (United States patent, No. 1199359), which is a hydraulic speed reducing mechanism. Tests disclosed that to connect a turbine running at 2,700 revolutions per minute to a reciprocating engine running at 90 revolutions per minute requires a speed reduction of about 30 to 1.

A Föttinger transformer has no efficiency at such a speed reduction. The construction proposed in the British patent therefore was not practical and never went into commercial use.

The next attempt to solve the problem was by Dr. Bauer, chief engineer and director of the Vulcan Company, then the largest shipbuilding concern in Germany. Dr. Bauer (German patent, No. 335065 of 1921) proposed the use of an elastic coupling and a reduction gear for connecting the exhaust turbine and the propeller shaft. This resulted in failure, because no elastic coupling was found that would transmit the required amount of power and prevent the transmission of the torque variations from the reciprocating engine to the turbine.

The British patent, No. 193388 (April 30, 1924), proposed a double reduction gear and a friction or jaw clutch between the two parts of the reduction gear. A jaw clutch rigidly connects the parts so that the torque variations of the reciprocating engine are transmitted to the turbine. Normally a friction clutch operates in about the same way. This invention also resulted in failure.

It thus appears that the best marine engineers in the world, with unlimited means at their command, failed to solve the problem, the solution of which the tribunals of the Patent Office and the court below have ruled to be obvious to any one skilled in the art.

While appellant's solution of the problem was as simple as it was efficient, it by no means follows that it did not involve invention. As a connection between the propeller shaft driven by the reciprocating engine and the shaft of the turbine driven by the exhaust steam from the reciprocating engine, appellant introduced three elements in series; namely, a reduction gear, a hydraulic coupling, and a second reduction gear. The combination of these with the turbine, engine, and propeller shaft was admittedly new, and was productive of marked results. Wach was paid about $380,000 for his alleged invention, and two ships were equipped with it in 1926. From that time to the end of 1933 the device had been installed in 225 new and old ocean-going vessels by shipyards of the leading countries of the world, except the United States. A saving or increase in power of 20 per cent. or more, and a fuel saving amounting to approximately $3,600,-

000 per year resulted. England, Germany, Holland, Denmark, Norway, and Sweden, having patent examination systems similar to our own, granted patents to Wach, and among licensees was Swan-Hunter, patentée of British patent, No. 9963, the main patent relied upon to show anticipation.

Many times has it been said that the object of the patent law is the benefit to the public. To that end section 4886, R. S. (35 USCA § 31), expressly provides that the invention or discovery must be "new and useful." Evidence of great utility of a device may in some circumstances be accepted as evidence of invention. "Where the method or device satisfies an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill. For mere skill of the art would normally have been called into action by the generally known want." Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U. S. 464, 55 S. Ct. 449, 454, 79 L. Ed. ——, decided March 4, 1935. The apparent simplicity of the new device often leads to the assertion by inexperienced persons that any one familiar with the subject could have produced it, "but the decisive answer is that, with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to any one before." Potts & Co. v. Creager, 155 U. S. 597, 15 S. Ct. 194, 199, 39 L. Ed. 275. In Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527, the court said: "Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration." In Lucke v. Coe, 63 App. D. C. 61, 69 F.(2d) 379, 383, we said: "All the patents relied upon by the Patent Office as anticipating Lucke's device were before these engineers, yet, highly skilled in the art as they were, they were unable to do what Lucke has done; namely, produce a machine that is a greater advance over the prior art than any one of the patents referred to by the Patent Office

tribunals. It is comparatively easy, now that the Lucke device is in evidence, to take this and that from the references and achieve a nunc pro tunc solution of the problems confronting Lucke when he made his invention." See, also, In re Eastwood, 33 App. D. C. 291; In re Huff, 48 App. D. C. 258, and In re Coykendall, 58 App. D. C. 280, 29 F.(2d) 868.

Where, as here, the new device is also useful and marks a distinct and novel advance in the art, it should receive patent protection. For almost 25 years, as we have seen, patents have been granted in this art on devices that proved to be practically worthless, and yet appellant has been refused a patent on his successful device because the Patent Office has found that, by taking this and that from the unsuccessful patents, the result achieved by appellant could have been accomplished.

In the British patent, No. 9963, principally relied upon by the Patent Office, no speed-reducing gears are shown. The Patent Office holds that if the speed-reducing mechanism was necessary it may be found in British patent, No. 193388. The idea of a reduction gearing may be gleaned from that patent, but the gearing there disclosed would not be operative in combination with British patent, No. 9963. But, says the Patent Office, "if this type of coupling (the jaw clutch or friction clutch) proved unsatisfactory in actual practice," another type could be substituted. In the Swan-Hunter patent the use of a Föttinger transformer is suggested. Appellant used a Föttinger coupling with reduction gears. In his testimony an expert witness for appellant testified: "The difference between the Föttinger coupling and the Föttinger transformer is that the Föttinger transformer is a hydraulic speed reduction mechanism. The hydraulic coupling has no speed reduction in it. It is simply a means for coupling two shafts together whereby the speed of the primary shaft, the input shaft, is about equal to that of the secondary shaft. Swan-Hunter attempted to put in the Föttinger transformer and failed, and Wach put in the Föttinger coupling and succeeded."

What has been ruled to be obvious was not obvious to the highly skilled marine engineers who attempted to solve the problem. Appellant succeeded where they failed, and his success in the circumstances

should be recognized by the granting of a patent.

The decree therefore is reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.