**THORNTON v. COE, Commissioner of Patents.**
**No. 7009.**

United States Court of Appeals for the District of Columbia.

Decided Dec. 29, 1938.

Geo. K. Woodworth, of Boston, Mass., and Wm. L. Edmonston, of Washington, D. C., for appellant.

R. F. Whitehead, Solicitor, United States Patent Office, for appellee.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a decree of the District Court of the United States for the District of Columbia dismissing, after a hearing on the merits, a bill of complaint filed by the appellant Thornton, hereafter referred to as Thornton, under Rev.Stat. § 4915, as amended, 35 U.S.C.A. § 63. The appellant sought by the bill a decree authorizing and requiring the appellee, United States Commissioner of Patents, hereafter referred to as the Commissioner, to issue a patent upon Thornton's application No. 622,059, for improvements in section or warper beams. The present suit concerns only claims 9 and 10 of the application. These were rejected by the primary examiner and the rejection was affirmed by the Board of Appeals. The trial court held that the claims were not patentable over the prior art, and the sole issue raised by the assignment of errors is as to the correctness of that ruling.

Thornton testified as an expert in the trial court, and from his testimony the following appears in respect of section or warper beams. In a spinning mill the process, so far as here pertinent, is as follows: Fibre in its raw state is first machine carded to remove dirt. The fibres are then twisted and stretched until they are formed into a loosely twisted yarn, similar to cotton batting in consistency, called roving. This is wound upon a jack spool placed

upon a spinning frame. Then the roving is drawn off the jack spool and spun into tightly twisted yarn which is wound upon a bobbin. A number of bobbins are placed upon a frame and the yarn wound from them onto spools or cones called packages or cheeses. These are placed in a creel and the yarn is wound from them, 500 to 800 threads simultaneously, onto a warper beam, which is in this phase of the process turned mechanically. A warper beam is nothing more than a very large spool—having a wooden barrel as much as 10 inches in diameter and circular heads of still greater diameter. The warper beam itself weighs about 175 pounds and carries from 500 to 700 pounds of yarn. After being filled with yarn the warper beam is placed in a machine called a slasher and the yarn is then drawn from the beam through a sizing box and wound onto loom beams, each of which is smaller than the warper beam and consequently carries a smaller quantity of yarn. Again, in this process of drawing the yarn from the warper beam, from 500 to 800 threads are unwound simultaneously; here, however, the warper beam is not turned mechanically but by the force exerted

ILLUSTRATION A

through the pull upon the strands of yarn as they are wound onto the loom beams.

For at least eight years prior to the introduction of Thornton's device into the art, warper beams were subject to the defect of "spreading" of the heads, as depicted in Illustration A. This spreading is caused by pressure against the heads of the beam resulting from the weight of the yarn when wound upon the beam and from expansion of the yarn upon absorption of moisture from an excessively humid atmosphere. This spreading of the warper beam heads results in what are called selvage breaks. The threads which are near the ends of the beam are known as selvage threads; they are at the edge portions or selvages of the fabric when woven. The selvage breaks occur thus: when the heads spread, the selvage threads settle, or pack down, and then when the warper beam is unwound onto the loom beams, the selvage threads at the ends of the warper beam take the whole pull, the threads near the center of the beam running slack—this because when the selvage threads have settled the diameter of the yarn mass where they are located is less than the diameter of the yarn mass at the center portion of the beam. The end threads break because they cannot stand the strain to which they are subjected in taking the whole pull. Also, when the warper beam heads spread, a small "V" shaped space develops between the ends of the beam barrel and the inner face of the heads, and into such space a part of the selvage threads are caught and held tightly. Prior to the use of Thornton's improvement it was necessary, in order to meet the problem of spreading of warper beam heads, to use, in winding the yarn onto the beam, a so-called expansion comb having a number of thread guiding fingers which by means of a crank could be brought closer together or farther apart. Through this device the warp could be made narrower or wider, as required, and the spreading of the beam heads was thus compensated for. But it consumed the whole time of one operative to tend a warper beam and adjust the expansion comb, whereas if spreading of the beams and the consequent use of this expansion comb could be avoided, a single operative could tend two or three beams.

The Thornton application is for a patent for an improvement upon warper beams as a result of which the heads will not spread. The claims are as follows:.

"9. A section beam comprising a shaft, a barrel and a pair of heads mounted on said shaft, a pair of discs each engaging the outer face of one of said heads and being independent of and separable from the latter and in threaded engagement with said shaft, each said disc being convex outwardly with respect to the head adjacent thereto and each being substantially larger in diameter than said barrel, and means for locking each said disc against axial movement with respect to said shaft, whereby said heads are prevented from spreading when the beam is filled with yarn.

"10. A section beam comprising a barrel, a shaft passing through the same, and a pair of heads mounted on said shaft, the ends of said shaft extending beyond said heads, a pair of discs each engaging the outer face of one of said heads and being independent of and separable from the latter, each said disc being convex outwardly with respect to the head adjacent thereto and each being substantially larger in diameter than said barrel, and means for locking each said disc against axial movement with respect to said shaft, whereby said heads are prevented from spreading when the beam is filled with yarn."

The two claims differ only in that claim 9 is limited to discs which are in "threaded engagement" with the beam shaft, whereas claim 10 is not so limited.

The Thornton improvement as described in the specification and drawing, Illustration B, and in Thornton's testimony,

### ILLUSTRATION B

Fig. 3.

discloses a wooden beam barrel 15, with a laminated wooden head 19, and a stiffener disc 27. This disc is made preferably of a resilient material such as hot-rolled steel, is concave in form and is in threaded engagement with the beam shaft 10. The disc is disposed with the periphery of its concave face in engagement with the outer face of the head 19 so that by screwing the disc down the shaft in the direction of the head, it will be forced against the head and thus prevent spreading of the latter when pressure is exerted upon the inner face thereof by the yarn. There is a lock nut 29 which also screws along the shaft 10. A similar stiffener disc is applied to the other head of the warper beam. The beam shaft is continuous. The diameter of the discs is—and this is essential in the device—substantially greater than that of the barrel of the beam; for example, if the barrel is 10 inches in diameter, the discs are from 13 to 15 inches in diameter. By the use of a spanner wrench to be fitted into the holes 28 in the discs, the latter may be turned up against the outer faces of the heads with any desired force and then held in position by the lock nut 29. When a warper beam is to be used the discs are adjusted against the heads before the yarn is wound upon the beam, the adjustment varying with the type of yarn and the conditions of weather. That is to say, before the yarn is wound upon the beam, the discs will be screwed in against the heads so as to dish the periphery of the latter slightly inward—to such degree as is estimated will be necessary to resist the pressure of the type of yarn to be used. Then when the yarn has been wound upon the beam, the pressure upon the inner faces of the heads will straighten them back so that, if the adjustment has been correct, they will resume and maintain perpendicularity to the barrel. This adjustment may be altered from time to time, during the operation of the warper beam, to meet variation in pressure caused by changing humidity in the atmosphere.

According to Thornton's testimony, his improvement has been a distinct success. Before its advent the company of which Thornton is an officer, and which manufactures warper beams, had received complaints against them, but after the beams had been manufactured with the steel antispreading discs, the complaints ceased. Also, despite the greater cost of the improved warper beams, they have gone into large

commercial use, the company's sales having increased from 250 beams sold in 1931 to 4,850 in 1936, a total of 10,550 having been sold during the period 1931–1936.

The references cited by the Commissioner and the trial court are Marcy, patent No. 455,224 (1891); Taft, patent No. 1,490,864 (1924); and Peterson, patent No. 1,484,154 (1924). The Marcy invention is an improvement in jack spools. As described in the specification, and shown in Illustration C, the invention "relates particular-

ILLUSTRATION C

ly to that class of spools which are designed for mill use; and it relates especially to the head of the spool and to its attachment to the barrel." The spool has a wooden barrel A and a head G of elastic metal like spring steel. The spindles N are not continuous shafts, but gudgeons extending only a short distance into the barrel of the spool. At each end of the spool the gudgeon is threaded for a part of its length and a washer L, also threaded, is screwed down the gudgeon to the end of the threads; then the gudgeon itself is inserted into the barrel through the block CD and held by means of a nut J and a pin O, the washer being thus drawn tightly against the outer face of the head G. The size of the washer is not specified, but the illustration shows it to be slightly larger in diameter than the barrel of the spool.

The Taft invention is also for an improvement in jack spools. As described in

the specification, and shown in Illustration D, it "relates to jack spools and fasteners

ILLUSTRATION D

therefor, and has for an object to provide an improved construction which may be easily applied, and which will not become loose during the operation of the spool. Another object of the invention is to provide a fastener for the gudgeon of the jack spool, which may be easily applied and locked in place, the construction being such as to cause the locking means to also lock the head of the spool against removal." At each end of the barrel the gudgeon 15 is passed through a thin metallic somewhat cone shaped disc 5 which sits against a shoulder 16 on the gudgeon and is then held against the spool by virtue of the gudgeon itself being inserted into the barrel and screwed into the nut 18 which is locked by the spring 20. The disc is riveted to the combined shoulder, or web, and sleeve 6, 12, 7, through which the gudgeon is passed, and this web is set into a suitable nostril or slot let into the end of the barrel. The size of the disc is not stated, but, as in the Marcy invention, it is shown in the drawings as of slightly larger diameter than that of the barrel of the spool.

According to Thornton's testimony, the Marcy and Taft jack spools are not subjected to yarn pressure of any such force as will displace the spool heads from the perpendicular; indeed the improvements are not intended to counteract spreading

of the heads; they are intended to have, and do have, only the effect of holding the spool heads tightly against the barrel. Further, according to Thornton, neither the Marcy nor Taft spool heads have the property of adjustability. Thornton testified that the pressure exerted by both the metallic disc of Taft and the washer of Marcy against the heads could not be varied once the gudgeons were set in place.

The Peterson invention is shown in Illustration E. It, like Thornton's device, is

### ILLUSTRATION E

FIG 2

for an improvement in warper beams. The specification recognizes that the beam heads in use at the time of the application were not sufficiently rigid to prevent spreading. It states:

"A particular object of the present invention is to produce a sheet-metal beam head which shall have a perfectly smooth, plane inner face, which shall be effectively braced against the pressure of the yarn load, and which shall possess sufficient strength and resiliency to ensure against breakage and distortion in ordinary handling."

The specification and drawings show a warper beam comprising two metallic heads, a wooden barrel, and a shaft running continuously therethrough with projecting ends constituting trunnions. According to the specification:

"Each beam head A comprises a main disk 1 having a peripheral outwardly-extending flange 2 which is concaved to provide a belt race. The beam further comprises a dished or concave bracing disk 3 of slightly smaller diameter than the main disk 1, the bracing disk being disposed with its concave side facing the outer side of the main disk. The main disk 1 and the brac-

ing disk 3 are suitably secured together, as, for example, by means of an annular series of spot welds 4.

"The beam head A further comprises an internal bracing disk 5 of approximately the same diameter as the barrel B. The bracing disk 5 is of dished form and is arranged with its concave side toward the outer side of the main disk 1. The peripheral portion of the disk 5 is secured to the main disk 1 by suitable means, as, for example, an annular series of spot welds 6.

"The main disk 1 and the two bracing disks 3 and 5 (together with a clutch element to be hereinafter mentioned) are secured together at their central portions by means of a sleeve or hub 7 which extends through central openings in said members and through a spacing sleeve 8 which is interposed between the main disk 1 and the bracing disk 5. The central portions of the bracing disks 3 and 5 lie in contact with each other. The ends of the hub 7 are expanded or spun over to secure the parts of the head rigidly together. The hub 7 is of such internal diameter as to fit upon the central shaft C.

  *  *  *

"The beam head A is clamped tightly against the end of the barrel B by a nut 18 turned on a screw-threaded portion of the shaft C. To lock the nut against rotation, a washer 19 is interposed between the nut and the head."

The specification further states:

"The disk 5, the spacing sleeve 8 and that portion of the disk 1 which lies within the circle defined by the barrel may be viewed as a truss consisting of the compression member 5, the chord or tension member 1 and the strut 8. It will be seen that this truss imparts great rigidity to that portion of the beam head which is clamped between the nut 18 and the barrel B and prevents any bending of the beam head in that region. Likewise, the disks 1 and 3 and the sleeve 8 constitute a truss which effectively resists forces tending to spread the beam heads apart. While the form of truss herein disclosed serves its intended purposes very well, other forms of trusses and other means of spacing the disks 1 and 3 apart and of securing said disks together may be employed without departing from the scope of the invention hereinafter claimed."

In respect of Peterson, Thornton in his testimony emphasized the unitary nature of the truss construction and the consequent

absence of the property of adjustability to varying pressures. An affidavit of Peterson himself stated that only 64 of his beam heads were made and that only 50 of them were sold to customers. An affidavit of John Corn, the sole purchaser of the Peterson heads, stated that they were satisfactory when first used, but were eventually discarded because they became spread from rough treatment in truck shipment back and forth between the spinning mills and the weaving mills. He further stated that the beams were not used with heavy yarn but only with fine yarn such as is used in sheeting, and that therefore his company had no difficulty with the heads spreading during the process of filling the beams.

In respect of patentability of the Thornton device, the position of the Board of Appeals was that:

". . . it clearly follows from the disclosure of the disk 3 in Peterson that no invention would be involved in making the disks in Marcy and Taft of still greater diameter than illustrated in these patents. It also seems clear to us that no invention would be involved in the provision of a single central shaft in lieu of the two stub shafts or spindles illustrated in these patents to Marcy or Taft in view of the disclosure of the shaft C in Peterson."

As phrased by the Commissioner the argument is that Thornton is not entitled to a patent for the reason that he was not the first to discover that the head of a warper beam may be pushed out of a perpendicular position by the force exerted by yarn, and that all that he has done is to place against the beam head a bracing disc, such as is shown in Marcy and Taft, in lieu of the bracing disc of Peterson.

The Thornton device is simple. But as stated in Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527, 1911:

"Its simplicity should not blind us as to its character. Many things, and the patent law abounds in illustrations, seem obvious after they have been done, and, 'in the light of the accomplished result,' it is often a matter of wonder how they so long 'eluded the search of the discoverer and set at defiance the speculations of inventive genius.' Pearl v. Ocean Mills, Fed.Cas.No.10876, 11 Off.Gaz. 2." 220 U.S. at pages 434, 435, 31 S.Ct. at page 447.

In the use of the large disc and continuous shaft of Peterson and Marcy's threaded engagement of disc and shaft, Thornton accomplished much more than a mere aggregation of the elements of the prior art. "It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention." Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177, 1881. Thornton produced not merely a disc successfully resistant to yarn pressure, but also one successfully adjustable to variations in pressure. To this accomplishment the Board of Appeals and the Commissioner give no weight, indeed no mention. This adjustability is, we think, not suggested in any obvious way by any of the references, much less accomplished by them. The adjustability of Thornton's device is clearly highly useful in respect of variations in yarn and weight pressures, and the commercial success of his device is amply established. We think that Thornton's accomplishment of adjustability is such that it cannot be said that want of invention is clear, and we may therefore properly resort to utility and commercial success to remove any remaining doubt. See Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 270, 37 S.Ct. 82, 61 L.Ed. 286, 1916; De Forest Radio Co. v. Gen. Elec. Co., 283 U.S. 664, 685, 51 S.Ct. 563, 75 L.Ed. 1339, 1931; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952, 1876. It appears that the problem of spreading of the heads of warper beams confronted the textile industry for at least eight years after the issuance of the patent to Peterson, before Thornton solved it with the adjustable disc; and it appears that Thornton's improvement was a distinct success. This is highly persuasive of invention. "Where the method or device satisfies an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill. For mere skill of the art would normally have been called into action by the generally known want. See [Webster] Loom Co. v. Higgins, 105 U.S. 580, 591 [26 L.Ed. 1177]; Krementz v. Cottle Co., 148 U.S. 556, 560 [13 S.Ct. 719, 37 L.Ed. 558]; Hobbs v. Beach, 180 U.S. 383, 392 [21 S.Ct. 409, 45 L.Ed. 586]; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 429, 430 [22 S.Ct. 698, 46 L.Ed. 968]; Expanded Metal Co. v. Bradford, 214 U.S. 366, 381 [29 S.Ct. 652, 53 L.Ed. 1034]." Paramount Corp. v. Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997, 1935. We think the Thornton device is clearly patent-

able within the elementary principles governing combinations and illustrated in Loom Co. v. Higgins and Diamond Rubber Co. v. Consolidated Rubber Tire Co., supra. See also Wach v. Coe, 64 App. D.C. 235, 77 F.2d 113, 1935; In re Eastwood, 33 App.D.C. 291, 1909.

Reversed and remanded for further proceedings in accordance with this opinion.

EDGERTON, Associate Justice (dissenting).

The Patent Office references alone leave me, as they leave the majority of the court, in some doubt concerning invention. I think there was no invention in combining the large disc and continuous shaft of Peterson with Marcy's threaded engagement of disc and shaft. My doubt relates chiefly to the device for producing variations in pressure. I should have less doubt if the evidence of need and success, with respect to that specific feature, were more impressive. No doubt that feature is useful; but I find nothing in the record to show that appellant's device would not have met the need (to prevent spreading) reasonably well, and been widely adopted, if it had been permanently adjusted to resist the greatest expected yarn pressure, or even if it had required the use of a different spool, differently adjusted, for each expected pressure. Appellant testified that the disc is sometimes adjusted by the manufacturer. For reasons set forth in my dissent in Carbide & Carbon Chemicals Corporation et al. v. Coe, decided today, 69 App.D.C. 372, 102 F.2d 236, I think the decree below should be affirmed.