**CAMBRIDGE TRUST CO. et al. v. COE, Commissioner of Patents.**

No. 6615.

United States Court of Appeals for the District of Columbia.

Argued May 6, 1936.

Decided Nov. 23, 1936.

Arlon V. Cushman, of Washington, D. C., and Robert Cushman, of Boston, Mass., for appellants.

R. F. Whitehead, of Washington, D. C., for appellee.

Before MARTIN, C. J., and VAN ORSDEL, GRONER, and STEPHENS, JJ.

## VAN ORSDEL, J.

This appeal is from a decree of the District Court of the United States for the District of Columbia (formerly the Supreme Court of the District) in a suit brought under the provisions of section 4915, R.S., as amended (35 U.S.C. § 63 [35 U.S.C.A. § 63]), to authorize the Commissioner of Patents to issue letters patent on certain claims of an application, relating to a motion picture film having scenes depicted thereon in natural colors, together with a black and white sound track on the margin for reproducing the sounds accompanying the scenes.

The application was filed in the Patent Office by one Leonard T. Troland, now deceased. While the application was pending in the Patent Office, Troland executed an assignment to the Technicolor Motion Picture Corporation, which company subsequently executed a mortgage to Technicolor, Inc. Upon the death of Troland the Cambridge Trust Company was appointed executor of his estate.

The Board of Appeals finally rejected all twelve claims of the application, whereupon Troland's executor, the Technicolor Motion Picture Corporation, and Technicolor, Inc., filed suit as above noted.

The court below decreed that the owner of the application was entitled to letters patent on claims 6, 7, 8, and 9, which are process claims, and dismissed the bill as to the remaining claims. From the decree plaintiffs took this appeal. The Commissioner did not appeal from the allowance of the process claims. The appellants have formally waived claims 1, 2, and 10. Hence only claims 3, 4, 5, 11, and 12 are before the court for adjudication.

The claims in suit are product claims, which, though varying slightly in expression and scope, relate to the same product; namely, a motion picture film having pictures thereon in natural colors and a sound record in black and white.

Patents covering the claimed invention have been granted in Great Britain, Germany, France, Argentina, and Canada. The claims in the foreign patents correspond to those in the present application. It also appears that this product has gone into extensive commercial use. It has been used in approximately 264 pictures, totalling more than 125,000,000 feet of film. These pictures have been displayed in practically every country in the world. It is claimed that this product is the only natural color film which may be used, with accurate sound reproduction, in any theater, despite the differences in the various types of sound reproducing machines now in use.

The claims here in issue were rejected by the tribunals of the Patent Office as covering matter unpatentable in view of the prior art, citing three patents, namely: Ries, No. 1,473,976, dated November 13, 1923; Thornton, No. 1,361,783, dated December 7, 1920; and Wyckoff et al., No. 1,303,837, dated May 13, 1919.

The Ries patent discloses the production of a motion picture film having both the pictures and sound record in black and white. Ries makes no reference whatever to natural color pictures. In other words, what Ries discloses is the ordinary commercial product in which both pictures and sound are produced photographically in black and white.

The Wyckoff patent makes no reference either to a sound record or to motion pictures in natural colors. Wyckoff's disclosure relates to the making of motion pictures in black and white by the ordinary photographic process, and then tinting the pictures, after they have been completed, in a crude attempt to produce natural colors. His method, in substance, was to tint selected portions of a negative film and then press the negative against the corresponding positive, so that the coloring was transferred to the positive print.

The expert testimony adduced by appellants at the trial was to the effect that Wyckoff's method was impractical, and the court below, in his findings of fact, said: "The Wyckoff and Handschiegl Patent No. 1,303,837 describes the making of motion pictures in black and white by the ordinary

photographic process and then tinting certain portions of the black and white picture with coloring matter after the picture has been completed in black and white. The result is a tinted black and white picture. * * * There is a vital distinction between pictures in natural colors and tinted black and white pictures particularly for the reason that with tinted pictures the color effect can be secured, even in a limited degree, only in the high-light portions and not in the shadows, the heavy deposit of silver in the shadows preventing the color from producing the proper effect; also for the reason that pictures in natural colors require at least two and preferably three complementary colors and Wyckoff et al. disclose only one 'tint.' "

The Thornton patent discloses no sound track. It relates to a method of coloring pictures which, while it might be of use on still pictures, is impractical for use in the motion picture art. The lower court found as a fact that Thornton's method has never been employed in producing motion pictures, and that his patent "describes no process which will give an acceptable motion picture film in natural color."

The court also found that it is not possible successfully to combine Ries and Wyckoff in any way to secure Troland's product; that, if such a combination were attempted, the result would be a black and white picture record, with a color tint superimposed, and a black and white sound track, something substantially different from Troland's product. The court further found that it is impossible to combine any of Thornton's methods of coloring with a black and white sound track, as disclosed by Ries, to produce pictures in natural color, suitable for motion picture projection with a sound track in black and white.

Appellant's process claims, covering the method of producing this film, having been held patentable by the lower court, we come now to the adjudication of the patentability of the completed product. The product obtained was the result of a new process, combining elements anticipated by prior inventors.

■ We are not in agreement with the contention of counsel for the appellant that, because claims for the process were held to be patentable by the court below, it necessarily follows that the product is also patentable. This court held to the contrary in Re Higgins, 40 App.D.C. 29. It has been repeatedly held that a process for the making of a product may be patentable, while the product may be lacking in invention, if it is lacking in novelty. This, we think, is the difficulty which here confronts the appellant.

■ We are not impressed by the contention that the widespread commercial success and utility of this product is evidence of its patentability. It is true that evidence of great utility may, in some circumstances, be accepted as evidence of invention. Where the method or device satisfies an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill, for mere skill in the art would normally have been called into action by the generally known want. Paramount Corporation v. Tri-Ergon Corporation, 294 U. S. 464, 474, 55 S.Ct. 449, 453, 79 L.Ed. 997. Troland can hardly be said to have supplied an old and recognized want. Talking pictures were first displayed in 1926, with a disc arrangement for sound, and then in 1927 with sound reproduced by the film method. Troland filed his application in 1928. The Technicolor Motion Picture Corporation (which appears to have been the exclusive producer of colored talking pictures, with the exception of a few colored talking cartoon films, with colored sound tracks) produced its first talking picture in natural colors in 1931, using Troland's method. It thus appears that there was no generally recognized demand for talking pictures in natural colors until after Troland applied for a patent.

This same factual situation distinguishes the case at bar from Wach v. Coe, 64 App. D.C. 235, 77 F.(2d) 113, which appellants claim controls here. There we had a device for coupling up to a single shaft the power generated by a reciprocating steam engine and that generated by an exhaust steam turbine. The Patent Office denied applicant a patent, holding that the device was obvious, and the Supreme Court of the District of Columbia dismissed applicant's bill. This court reversed the case, and in the course of its opinion clearly illustrated the distinction between the Wach Case and the case at bar, as follows: "The idea of utilizing in a steam turbine the exhaust steam from a reciprocating engine and propelling a ship with the combined power of the engine and the turbine was disclosed as early as 1901 by Parsons * * * but he did not know how effectively to connect the engine and turbine to the same propellor shaft. * * * For almost a quarter of a

century, following the Parsons invention efforts were made by leading marine engineers of the world to connect the engine and turbine to the same propellor shaft, but without success. * * * It thus appears that the best marine engineers in the world, with unlimited means at their command, failed to solve the problem, the solution of which the tribunals of the Patent Office and the court below have ruled to be obvious to any one skilled in the art."

■ The trial court was right in holding the product to be unpatentable. In his opinion the learned justice refused to allow the product claims on the authority of Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 55 S. Ct. 449, 450, 79 L.Ed. 997. In that case claims were held unpatentable which involved "a method of producing a single photographic film by printing upon it a picture record and a sound record from separately exposed and developed negatives." In holding that there was no patentability, on the basis of the prior art, the court said: "Successful operation of the talking motion picture involves synchronization of the sound and picture records. The difficulties of synchronization are obvious where the recorded picture and sounds are separately reproduced by independent mechanisms. Success has been achieved, and convenience in use of the two records secured, by uniting them upon a single positive film and passing it at the requisite uniform speed through a single apparatus designed to reproduce both the sound and the picture. A familiar method of securing the two records on a single film is by photographing simultaneously the picture record and the sound record side by side upon the same strip of film and then printing from the developed negative a single positive film."

In pointing out that this method is disclosed in a number of foreign, as well as domestic patents, reference is made, among others, to the patent to Ries, as showing that there is nothing new in photographing the picture record and the sound record, side by side on the same film, and printing therefrom a single positive film. In disposing of the claims there made, the court said: "It will be observed that the claimed method or process is for combining sound and picture records on a single film and comprises three steps: First, the simultaneous photographing of a picture record and a record of the accompanying sound, each on a separate negative; second, the separate development of the two negatives in a manner appropriate to each; and, third, the printing either simultaneously or successively, from the two negatives of the sound record and the picture record side by side on a single positive film."

After a prolonged discussion of the prior art, the court stated that the claim to invention was narrowed to the contention "that the patentees secured the benefit of these well-known advantages by resort to the added step of uniting the two separate photographic records, sound and picture, by printing them on a single film."

It is clear, we think, that, if the process there involved was unpatentable because it was obvious, the product here under consideration must be held to be unpatentable for the same reason.

■ To justify the issuance of a patent, the product must be new as such; it must stand upon its own invention, independently of the process through which it is made. We think Troland's conception, in view of the prior art, is obvious to any one skilled in the art. The key to the situation lies in the combination of Ries and Thornton. It appears from expert testimony that a combination of Ries and Thornton, using the latter's preferred cyanotype method, would not produce a film having colored pictures with a black and white sound track. The sound track under the cyanotype process would be blue. The satisfactory use of this sound track, due to the variations in the kinds of photoelectric cells used in sound reproducing machines, is restricted to limited types of such machines. This fact being well known, there could be no invention in conceiving a film in colors with the sound track in black and white so that it could be used in all types of sound reproducing machines. In other words, all that was necessary was to substitute a black and white sound track for the blue sound track.

In this connection the Board of Appeals in its decision said: "In view of the very brief and broad reference to the simple solution of the problem we think that after it was found that color tints interfere with the sound record, if present therein, that inventive concept is not involved in broadly separately producing these two zones on the film, leaving the sound record in plain black and white. We find no distinction as to patentability between the conception, whether stated as a partially produced film

as in claims 1 and 2, or the completed film as in claims 3, 4 and 12, or the method claims 5 to 10. It is our conclusion that patentability is not involved in the association of the broad features, namely, a black and white sound record of Ries on a picture film with pictures produced in natural or other colors in the picture zone as in Wyckoff et al. or Thornton."

The concept of a film having colored pictures and a colored sound track was obvious from the prior art; therefore a mere variation in the film by substituting a black and white sound track, which was known to be superior, was such an obvious step to one skilled in the art that it does not rise to the dignity of invention.

The decree is affirmed, with costs.