**HIMES et al. v. CHADWICK.**

No. 13100.

United States Court of Appeals
Ninth Circuit.

Sept. 24, 1952.

Mellin, Hanscom & Hursh, Oscar A. Mellin, LeRoy Hanscom and Jack E. Hursh, San Francisco, Cal., for appellant.

Duane C. Bowen, C. M. McCune and Ford E. Smith, Seattle, Wash., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

Appellant as owner of "Parks" patent No. 2,011,232,[1] and the "Himes" patent No. 2,243,421,[2] brought this action to recover damages for alleged infringement of both patents by the appellee. After a trial by jury, and at the conclusion of the evidence, the appellee moved for a directed verdict. The motion was denied and the case submitted upon instructions the correctness of which is not challenged by either party. The jury returned a verdict finding the claims in issue to be valid and infringed. Thereupon defendant-appellee moved for judgment notwithstanding the verdict, which motion was sustained. Judgment was entered adjudging the claims in issue under both patents to be invalid and that the claim of the Himes patent which was

---

1. The Letters Patent were issued on August 13, 1935. Appellants became owners by assignment in said Letters Patent on July 26, 1948.

2. Issued to appellant Ross A. Himes on May 21, 1941.

'n issue was not infringed.[3] In granting the prayer of defendant's counterclaim, the judgment enjoined plaintiffs from prosecuting in any court any suits or actions against the defendant or his customers for infringement of either of the patents.

On this appeal from the judgment, primary emphasis is placed upon the proposition that the presence or absence of patentable invention, and whether there was infringement, were questions of fact and that it was the province of the jury to weigh the evidence and decide these questions. It is asserted that the circumstances of this case are not such that the trial court had the right or the power to set aside the verdict because there was substantial evidence of novelty and invention in respect to each patent as well as substantial evidence of infringement of the Himes patent.

The question before us is whether "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict"[4] and that such conclusion was the one arrived at by the trial judge.

■ The right and duty of the trial judge to direct a verdict in a patent case, where the circumstances indicate that the jury has departed from the relevant legal criteria by which either a jury or a judge must be guided in their or his fact-finding function, was well expressed in Packwood v. Briggs & Stratton Corp., 3 Cir., 195

F.2d 971, 973, as follows: "A jury in a patent case is not free to treat invention as a concept broad enough to include whatever discovery or novelty may impress the jurors favorably. Over the years the courts of the United States, and particularly the Supreme Court, have found meaning implicit in the scheme and purpose of the patent laws which aids in the construction of their general language. In this process, rules and standards have been developed for use as guides to the systematic and orderly definition and application of such a conception as invention in accordance with what the courts understand to be the true meaning of the Constitution and the patent laws. Once such standards and rules are authoritatively announced any finding of 'invention' whether by a court or a jury must be consistent with them." We proceed them to inquire whether this was an appropriate case for the exercise of this power by the trial judge.

In granting the motion for judgment n. o. v. the court necessarily held that claims 2 and 5 of the Parks patent were invalid.[5] Cartons constructed pursuant to the descriptions contained in the claims accomplish three things for the user of the devices. First, when the carton is assembled for packing and shipping it lies flat, as the hinged connections of the sidewalls permit the carton to be collapsed and the parts which form the bottom of the

---

3. By stipulation before trial the parties limited the claims in issue of the Parks patent to claims 2 and 5 and of the Himes patent to claim 1. Infringement of the Parks claims by appellee's device was conceded. Both validity and infringement of claim 1 of the Himes patent were in issue.

4. Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Cutter Laboratories, Inc. v. Lyophile-Cryochem Corp., 9 Cir., 179 F.2d 80, 84.

5. Claim 5 reads: "A folding carton comprising a plurality of side walls hingedly connected at their edges to form a polygonal enclosure, and a bottom wall formed in a plurality of sections, each section being hingedly connected at two edges to the bottom edges of two adjacent side walls and being creased for folding on a line extending across the section from a

point adjacent the hinged connection between the two side walls to which said section is connected, whereby said section may be folded in planes parallel with said side walls when the carton is collapsed, the free margins of said sections being formed with similarly shaped interlocking means adapted to interengage for holding the carton in extended position, the interlocking means of each free margin comprising a lug extending along one-half of said margin and adapted to overlap the unlugged half of the margin of the next section, the bottom sections being automatically moved into position for engagement of the interlocking means when the side walls are extended to the normal open position."

Claim 2, a narrower claim, is limited to "rectangular formation" with "bottom wall formed of two identically similar sections", but is otherwise similar to claim 5.

carton, themselves hingedly connected to the lower edges of the adjacent sidewalls, are so creased for folding as to permit the bottom to fold flat within the collapsed sidewalls. This capacity for collapsing and flattening makes it possible to ship the cartons in large quantities within limited space. Second, the portions of the carton which form the bottom are so attached to the lower edges of the sidewalls that when the carton is to be set up for use it is necessary only that the operator push with both hands upon the flattened sidewalls moving them into a rectangular position which movement brings the sections forming the bottom into position. This feature is useful in assembly line operations as it permits very rapid setting up of the carton. Third, two of the four sections forming the bottom are equipped with a lug or rounded interlocking part so that when the carton is shoved into its rectangular shape and the bottom portions are thereby drawn into position, the two lugs on opposite sides of the bottom engage and lock, preventing the recollapse of the carton and holding it firmly in its erected position.

Folding cardboard cartons or boxes are produced in a field of art both old and crowded. The hingedly connected sidewalls, the collapsing of the carton for shipment, and the construction of the bottom sections falling inside of the sidewalls when they are collapsed, are all old and antedate the patents here in question. One of the appellants testified that in his view the thing that distinguished the Parks box or carton from those which preceded it was what he called "the automatic non-returnable locking of the bottom", the feature described as item "third" above.

The appellee asserts that the Parks claims 2 and 5 are invalid because anticipated by the disclosure of the Berkowitz patent No. 1,700,733, of February 5, 1929. Appellee, in an effort to demonstrate this, has pointed out that the Parks claims here involved literally "read on" the Berkowitz drawings. He has incorporated in his brief plates on which these drawings are reproduced and alongside of which are printed the text of the Parks claims. An examination of these plates in themselves does seem to disclose that the phraseology in the claims are apt descriptions of the Berkowitz drawings. The Berkowitz patent was one for "a folding box with self-locking bottom". The appellants do not question the fact that the Parks claims do "read on" the Berkowitz drawings, but their answer to the inferences sought to be drawn from this fact is that a carton constructed in accordance with the disclosures of the Berkowitz patent is inoperable when the carton is oblong. They say that even if the Berkowitz carton when constructed in a square form would perform its intended function, it cannot be made to work or to lie flat or otherwise function when the length of the carton exceeds its width.

■ We do not undertake to pass upon either of these contentions, that is to say, as to the inferences to be drawn from the "reading on" mentioned or as to the consequences of the inoperability with respect to which there was some evidence. As for the proposition that the Parks claims "read on" the Berkowitz drawings, we think that this does not necessarily negative invention. Resort must be had to the specifications and drawings to aid in the construction of the claims for the purpose of ascertaining the presence or absence of invention. Payne Furnace & Supply Co. v. Williams-Wallace Co., 9 Cir., 117 F.2d 823, 825, certiorari denied 313 U.S. 572, 61 S.Ct. 958, 85 L.Ed. 1530.[6]

■ When the Parks claims are read in connection with the Parks specifications and drawings, the demonstration of "reading on" the Berkowitz drawings is not convincing.[7] We must inquire whether the patent relied upon as an anticipation would teach the mechanic skilled in the art the solution to the problem claimed to be solved

6. Similar resort may be had to determine infringement, McRoskey v. Braun Mattress Co., 9 Cir., 107 F.2d 143, 146; or the scope of a prior patent. Lanyon v. M. H. Detrick Co., 9 Cir., 85 F.2d 875, 877.

7. For a discussion of the dangers of a strict verbal construction, see Bianchi v. Barili, 9 Cir., 168 F.2d 793, 799.

by the invention now in issue. Cold Metal Process Co. v. Carnegie-Ill. Steel Corp., 3 Cir., 108 F.2d 322, 333, certiorari denied 309 U.S. 665, 60 S.Ct. 590, 84 L.Ed. 1012.

If the Berkowitz and Parks "blanks" drawings are placed side by side much of the similarity which appears from the reading of the Parks claims on the Berkowitz drawings disappears. These drawings follow.

Feb. 5, 1929.                                          1,700,733

R. BERKOWITZ

FOLDING BOX WITH SELF LOCKING BOTTOM

Filed Feb. 7, 1925

Fig. 1.

Aug. 13, 1935.                                         2,011,232

R. D. PARKS ET AL

FOLDING CARTON

Filed May 22, 1933

Fig. 1.

The principal difference, it will be noted, is that the bottom of the Parks carton is formed by extensions from each of the four sidewalls, while the Berkowitz drawing shows that it has extensions from two such sidewalls only. This difference alone, we believe, is sufficient to rebut the attempted inference sought to be gathered from the mere reading of the Parks claims on the Berkowitz drawing. The case cannot be disposed of by the simple "reading on" process upon which the appellee lays such great store.

The question remains whether, applying the standards commonly followed in cases involving claims of anticipation, it can be said that the disclosures of the prior art negative invention notwithstanding some differences and advances which may in the circumstances be no more than those which would occur to any person possessed of ordinary mechanical skill. Leishman v. General Motors Corp., 9 Cir., 191 F.2d 522, 530. The problem is whether Parks produced something better than that which went before, and if it did, whether under the rules and standards which must be the guide for both the judge and the jury, the addition made here by the putative inventor amounted to invention.

It will be noted that Berkowitz has what he called "an interlocking notch", 22. The rounded extension, 21b, which forms this notch, corresponds with and would seem to anticipate what Parks called his "interlocking lug", 70. Their functions in the interlocking process are precisely the same.

We have previously noted that the principal difference between Berkowitz and Parks is the utilization by Parks of extensions or flaps from each of the four sidewalls to form the bottom of the carton as distinguished from the utilization by Berkowitz of flaps from only two sidewalls. But the use of such extensions from all four sidewalls was demonstrably a portion of the art which preceded Parks. This is plain from the disclosures made by the Filmer patent[8] in 1931. Figure 1 of that patent, which is the "blank" which makes up the carton, is here reproduced.

Fig. 1.

Particularly significant is the description in the Filmer patent of how these extensions, which are there referred to as "flaps", are used in assembling the carton. It is there stated: "In such a box the flaps are as wide as the sides of the box and the adjacent flaps at two opposite corners of the box are sewn or otherwise connected together, one of each pair of flaps being creased, thereby enabling the two flaps which are connected together to move upwards into the body of the box as pressure is applied to the box at those corners where the flaps are not connected together." This is substantially a description of the

8. This was a British patent No. 345,682, accepted April 2, 1931.

method of assembling the Parks patent. This is done in Parks by gluing the parts of flap 44 which are next to line 66 to that part of the adjacent flap 52 which lies between the score line 60 and the right angled corner of the same flap. In like manner that part of flap 46 which is next to line 66 is glued to the adjacent flap 54 between the score line 60 and the right angled corner of the same flap. It will be noted that Filmer, in the language quoted above, described the result as follows: "Thereby enabling the two flaps which are connected together to move upwards to the bottom of the box as pressure is applied to the box." An identical result is described in the Parks patent by the statement that when expanding pressure is applied to the side walls of the carton "a positive force * * acts to move the bottom sections to proper position for closing * * * these bottom sections are caused to move toward horizontal planes as the side walls assume their expanded positions, this movement culminating in the interlocking engagement of the bottom sections."

It seems clear beyond controversy that the Parks carton has utilized for its automatic locking feature the lugs or notch of Berkowitz. A witness at the trial referred to the shape of these as being "a double fish mouth". When Parks, consciously or otherwise, imitated the Filmer device of utilizing four flaps instead of two in the Filmer disclosure, attaching adjacent flaps in the manner previously described, he got away from the features of Berkowitz which prevented its adaption to an oblong box. Thus Parks is no more than a combination of the disclosures of Berkowitz and Filmer.

■ The concept of invention may of course be present where a mechanical device involves no more than combinations of old and familiar elements and ideas. But before invention may be found "[t]he conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." Great Atlantic & Pac. Tea Co. v. Supermarket Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162. The test is whether the unification of the elements brought into the combination produces "unusual or surprising consequences". Great Atlantic & Pac. Tea Co. v. Supermarket, supra; Packwood v. Briggs & Stratton Corp., supra. "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008.

■ Measured by these standards and by the rules generally announced by the Supreme Court as tests for invention,[9] we think that so far as the Parks patent is concerned, this is a clear-cut case of lack of invention and that under the rule we have stated above as to its claims it was the duty of the court to enter a judgment n. o. v.

The second patent involved is the Himes patent above referred to. The issues respecting it relate to the validity and the infringement of claim 1.[10] This relates to a process or method which makes possible the blanking, creasing, folding and gluing

9. See Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; Jungersen v. Ostby & Barton Co., 335 U.S. 560, 566, 69 S.Ct. 269, 93 L.Ed. 235.

10. "A method of making boxes from double blanks each cut and creased to form two box blanks having their box-bottom forming parts at opposite sides of the double blank; each box blank being cut and creased to form hingedly connected side and end walls connected in end-to-end series; bottom sections foldably joining the respective walls, two of the bottom sections each having a flap extension connected to an end thereof by a diagonal crease extending toward an inner corner of such section, the walls of each box blank being opposite corresponding walls of the other box blank of the double blank; each wall and its associated sections and extensions constituting a wall assembly; said method comprising folding said extensions on the lower faces of sections to which they are respectively joined; folding the respective bottom sections flat upon the upper faces of their connected walls respectively, there-

of two boxes simultaneously from a double blank formed from a single sheet of material. It is designed to increase the output of cardboard boxes by a single machine.

The evidence shows without contradiction, and it is not disputed, that the stamping or cutting and creasing of two or more blanks by one operation on a cutting and creasing press was old. The novelty claimed here by Himes was that his process, including the cutting and creasing of the boxes, was such that the blanks would remain attached in the press beyond the cutting and creasing process and during the folding and gluing steps in assembling the boxes.

The drawings of the Himes patent show that the process starts with the cutting of the blanks for two boxes, the blanks lying longitudinally alongside of each other and connected by "weakened" lines, somewhat resembling a perforated line which facilitates the tearing in two of a sheet of paper. At the proper time the assembled boxes will be torn apart on these weakened lines or perforations. As the double blank proceeds through the folding and gluing machine, both portions of the double blank are folded and glued without this separation occurring so that the assembled boxes in the flat condition for shipping may be delivered to the customer still attached in pairs. The methods of folding and gluing are not different in any respect from that used in folding or gluing any other box, such for example as the Parks box.

The essential question before us is whether "inventiveness" was required to devise this method of blanking, creasing, folding and gluing two boxes simultaneously. It is not disputed that there was no novelty in nesting two or more blanks on a cutting or creasing press. The making of the weakened or perforated lines which join the two blanks is a process of ancient use. It appears to us that the trial court was obliged to hold that the utilization of

these notoriously old methods for the purpose of keeping two cartons together while performing, in a manner also old, the process of folding and gluing, did not constitute invention, but was something which would occur to the mere mechanic.

We hold claim 1 of the Himes patent to be invalid as lacking invention.

The judgment is affirmed.

by to upwardly expose the flap extensions; folding each assembly at the ends of the series upon the assembly adjacent thereto, to cause said flap extensions to engage respective cooperating areas of the adjacent assembly respectively; adhering said flap extensions to said areas; and adhesively hingedly connecting the free end edges of the series."