**KWIKSET LOCKS, Inc.**

v.

**HILLGREN.**

**HILLGREN**

v.

**KWIKSET LOCKS, Inc. et al.**

No. 13060.

United States Court of Appeals Ninth Circuit.

Feb. 3, 1954.

Rehearing Denied March 22, 1954.

**484**

Fred H. Miller, Los Angeles, Cal., for appellant and cross-appellee.

Hamer H. Jamieson, Los Angeles, Cal., for appellee and cross-appellant.

Before STEPHENS, HEALY, and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Carl A. Hillgren is the holder of United States Letters Patent No. 2,403,597, issued July 9, 1946, for an invention of a "Door Lock". Kwikset Locks, Inc., is the owner of United States Letters Patent No. 2,489,160, issued to Adolf Schoepe and Albert S. Lord, jointly, on October 20, 1947, on a "Doorknob and Method of Making Same", and assigned to Kwikset on November 22, 1949. Hillgren brought suit in the United States District Court for the Southern District of California, charging Kwikset, Adolf Schoepe, and Karl Reinhard (hereinafter referred to collectively as "Kwikset") with infringement of its "Door Lock" patent and seeking an injunction and damages. Kwikset answered, denying infringement and alleging that Hillgren's patent is void as anticipated. Kwikset in addition sought affirmative relief by way of counter-claim for injunction and damages based upon the allegation that Hillgren was infringing Kwikset's patent on a "Doorknob and Method of Making Same". Hillgren denied the charge of infringement and attacked the validity of Kwikset's doorknob patent.

The complaint and counter-claim were tried together. After hearing all the evidence, the court found that Hillgren's "Door Lock" patent No. 2,403,597 was valid and had been infringed by Kwikset and that Kwikset's "Doorknob" patent No. 2,489,160 was valid and had been infringed by Hillgren.

The court awarded both plaintiff (Hillgren) and counter-claimant (Kwikset) their prayers for injunctions and ordered that an accounting for damages be had against the defendant (Kwikset) and counter-defendant (Hillgren), respectively. Both Kwikset and Hillgren appeal from adverse judgments. We shall treat the appeal from the complaint and the appeal from the counter-complaint separately.

## I. The Hillgren "Door Lock"

The Hillgren "Door Lock" is described most simply as a reverse rocker type lock with a deadlatching mechanism. The Kwikset lock may be identically defined. As the court stated in its findings, the reverse rocker type lock is found in the prior art.[1] The reverse rocker type lock, employed by both Hillgren and Kwikset operates as follows:

---

1. Findings of Fact, 9(e): "A deadlocking mechanism is incorporated in the midst of a reverse rocker type lock mechanism and all of the advantages, functions and results of both the prior art reverse rocker type locks and the prior art deadlatched locks is achieved for the first time in one combination lock."

When a doorknob is unlocked the spindle may be turned in either direction, forcing the main action of the bolt forward. As the main action advances, it engages a pivoted rocker, forcing the top end of the rocker forward which consequently brings the bottom end of the rocker backward. Since the bottom of the rocker is engaged in the main lock bolt, this movement retracts the main bolt from its secured position in the door sash.

Both the reverse rocker type lock and the direct action bolt lock, as they appeared in the prior art, had one serious defect: Although the main action could not be put into play to bring back the main bolt when the knob was locked in position, if a knife or thin blade were inserted between the door sash and the main lock bolt, the bolt could be forced back and the door opened.

However, the prior art has also disclosed a mechanism for deadlatching the main bolt and thereby forestalling any attempt to force back the bolt other than by the turning of an unlocked door knob and spindle. The deadlatching mechanism operates in the following manner: In addition to the main bolt, the lock is constructed with an auxiliary bolt, independently operated and so located that when the door is in a closed position the main bolt is extended into the recess of the door sash while the auxiliary bolt is depressed back toward the main housing of the lock. Within the lock housing is a dogging arm which is held clear of the main bolt by the auxiliary bolt when the auxiliary bolt is in the extended position. However, when the auxiliary bolt is depressed, the dogging arm is freed and is so constructed that when unrestrained it moves into a position to block any effort to

force the main bolt back into the housing. However, when the main action of the lock is put into operation by means of the doorknob and spindle, the dogging arm is raised from its blocking position by a beveled lug which is part of or operates solely in conjunction with the main action.

Hillgren concedes that the trial court specifically found that a deadlatching mechanism was present in the prior art. However, the conclusion that the Hillgren patent is valid is based primarily upon Hillgren's claims, embodied in finding 9a, that the Hillgren patent discloses "[t]he world's first deadlatched reverse rocker type lock." In other words, Hillgren is claiming, and the district court sustained, a patent on a combination.[2]

Congress, in its exercise of a constitutional delegation of authority,[3] has provided for the patenting of inventions and discoveries of new and useful arts or processes, machines, manufactures or compositions of matter, or new and useful improvements thereof. Title 35 U.S.C.A. § 31 (cf. revision, 1952, Title 35, U.S.C.A. § 101). Thus, in order for the Hillgren lock mechanism to be patentable, it must be established as a combination which is an "invention".

What constitutes "invention" defies precise definition. The courts have attempted at least to fix some guideposts to indicate wherein the realm of invention lies. These judicial attempts at definition are either very sweeping and consequently general, or so narrow as to be applicable only to a specific device or process. And at times the courts are content to establish what is definitely not inventive. To require "exceptional imaginative talent"[4] or "creative genius"[5] or to declare that there must be an "impalpable something"[6] which

2. Findings of Fact 6: "Claims 1 and 2 of said Letters Patent No. 2,403,597 each cover a new *combination* and each constitutes *invention* over the prior art. [Emphasis ours.]"

3. Art. I, § 8, Constitution, U.S.C.A.

4. Gelardin v. Revlon Products Corp., 2 Cir., 1948, 164 F.2d 910, 911.

5. Magnaflux Corp. v. Coe, 1943, 78 U.S. App.D.C. 258, 139 F.2d 531; Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58. But cf. 35 U.S.C.A. § 103, 1952 Rev.

6. McClain v. Ortmayer, 1891, 141 U.S. 419, 427, 12 S.Ct. 76, 35 L.Ed. 800.

"spring[s] from that intuitive faculty of the mind" [7] is of no concrete aid to a judge who is a layman in the fields of science and engineering.[8]

 In the circumstance where a patent is sought on a combination of devices or processes known to the prior art, the concept of invention remains elusive. It has been said that, in order for the combination to be considered a patentable invention it must "perform some new or different function—one that has unusual or surprising consequences." Photochart v. Photo Patrol, 9 Cir., 1951, 189 F.2d 625, 627; Grinnell Washing Machine Co. v. E. E. Johnson Co., 1918, 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. There is no invention in a "mere aggregation of a number of old parts or elements",[9] nor in the accumulation of old devices which do not in some way exceed "the sum of its parts".[10] [Emphasis ours.] Moreover, a truly inventive combination must create what had not before existed or bring to light what lay hidden from vision [11] in a way which can be distinguished from "simple mechanical skill." [12] A mere advance in efficiency and utility is not enough to convert a non-inventive aggregation into a patentable combination.

The Supreme Court has recently considered the problem of patentable combinations and has established certain criteria and standards which the lower federal courts must apply in determining whether a combination patent is valid. The Supreme Court directs us to "scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra. The Supreme Court further requires that in order for a combination patent to be upheld, there must be a specific finding that the old elements which made up this device perform an additional and different function in combination, than they perform out of it. No such finding was made in the case at bar.[13] Nor do we believe that the district court applied the strict standard or close scru-

7. Hollister v. Benedict & Burnham Mfg. Co., 1885, 113 U.S. 59, 72, 5 S.Ct. 717, 724, 28 L.Ed. 901.

8. The revised Title 35 of U.S.C.A. provides as follows:
 § 100: "Definitions. When used in this title unless the context otherwise indicates—
 "(a) The term 'invention' means invention or discovery."
 § 103. "Conditions for patentability; non-obvious subject matter. A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the

manner in which the invention was made." July 19, 1952, c. 950, § 1, 66 Stat. 798.

9. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008; Pickering v. McCullough, 1881, 104 U.S. 310, 318, 26 L.Ed. 749.

10. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L. Ed. 162; Himes v. Chadwick, 9 Cir., 1952, 199 F.2d 100, 106.

11. Hollister v. Benedict & Burham Mfg. Co., 1885, 113 U.S. 59, 72, 5 S.Ct. 717, 28 L.Ed. 901.

12. McClain v. Ortmayer, 1891, 141 U.S. 419, 427, 12 S.Ct. 76, 78, 35 L.Ed. 800.

13. The court based its conclusion of invention on the findings that the Hillgren lock used fewer parts and required few-

tiny to this combination patent required by the Supreme Court.

It is agreed that the deadlatch mechanism is to be found in the prior art. Hillgren's claim is based on the fact that he is the first person to apply the deadlatch mechanism to a reverse rocker type lock. Beyond the application of the deadlatch principle to the reverse rocker type lock, no novelty is shown by the exhibits or record, nor in the finding of the court.[14] Conceding a high degree of mechanical skill to effect the combination, we are firmly convinced that the district court was clearly wrong in concluding that such a combination is patentable for it accomplishes no more than the sum of its parts.

In both the prior art, as exemplified by the Schlage lock, and in the patented Hillgren lock, as well as the allegedly infringing Kwikset lock, the deadlatching mechanism is engaged behind the main bolt by the action of an auxiliary bolt and is disengaged by a lug attached to or operated in conjunction with the main action. The principle upon which the deadlatching mechanism operates is no different if used in conjunction with a direct action or reverse rocker type lock. Such difference as there is to be recognized must be restricted to the realm of admittedly skillful mechanical know-how.

The case of Sargent v. Hall Safe & Lock Co., 1885, 114 U.S. 63, 5 S.Ct. 1021, 29 L.Ed. 67, dealt with an attempt to patent a time guard on a combination-lock. The device there sought to be patented rendered the lock incapable of being unlocked until the arrival of a predetermined hour. It was admitted that a time guard had previously been employed in connection with a key lock. The Supreme Court, in holding the patent invalid, quoted with approval the board of patent examiners: "Nor, so far as we see, has any invention been exercised. The time-movement [deadlatching mechanism] was originally invented to prevent locks from being prematurely unlocked, and, when once the combination had been invented, it is obvious that it was as applicable to one form of locks as to another; and, to grant a patent for the union of the time-movement [deadlatching mechanism] with every old form of lock, or with every new form which might appear, would manifestly place unjust restrictions on the original invention and defeat the very purpose of the law." Sargent v. Hall Safe & Lock Co., supra, 114 U.S. at page 79, 5 S.Ct. at page 1029; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., 4 Cir., 1930, 44 F.2d 288, 295.

We conclude that the district court committed reversible error in sustaining Hillgren's "Door Lock" patent since in so doing it failed to apply the strict standard for testing combination patents which was laid down by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra.

Appellee, Hillgren, has relied heavily upon the presumption of validity which attaches to a patent granted by the patent office and sustained by the district

er machining operations to accomplish "prior art functions and results", and on the finding that this was the first time the prior art reverse rocker type lock had been combined with the prior art deadlatching mechanism. Findings 9a to e.

14. Hillgren's reduction of the number of parts necessary to accomplish the art of deadlatching, and his reduction in the number of machining operations to produce a reverse rocker type lock in no way establish patentable novelty in the combination of the deadlatching mechanism with a reverse rocker type lock since, as is shown by the Kwikset lock, such reductions are not necessary in order to effect the combination or necessarily advantageous in any manner. Moreover, Kwikset admittedly uses more parts than Hillgren to deadlatch the bolt; and there is neither a claim nor a showing that Kwikset has copied or relied on Hillgren's fewer machining operations to manufacture the Kwikset reverse rocker type lock. Thus, Kwikset does not infringe Hillgren's deadlatching or reverse rocker manufacturing processes.

court. And he further urges that a finding of validity is a finding of fact which cannot be reversed unless clearly erroneous. The patent in the Atlantic & Pacific case, supra, had been sustained by the patent office and the district court, and the court of appeals had considered itself bound by the finding of fact of validity. Yet the Supreme Court reversed for failure to apply the proper test to a combination. We recognize and have given due weight to the expertness of the patent office and the thorough consideration of this problem by the district court. However, we must also recognize "that it is the 'standard of invention' that controls. That is present in every case where the validity of a patent is in issue. It is that question which the Court must decide. No 'finding of fact' can be a substitute for it in any case." Justice Douglas concurring in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at page 156, 71 S.Ct. at page 132, 95 L.Ed. 162; Himes v. Chadwick, 9 Cir., 1952, 199 F.2d 100, 102.

## II. The Kwikset "Door Knob"

Kwikset's patent No. 2,489,160 is on a "door knob" and a "method of making door knobs". The Kwikset knob has three major parts: the shell, an insert applicable to a door knob spindle, and a cap closing the outer end of the shell. Since knobs consisting of these three elements are not new to the art,[15] if the validity of the Kwikset patent is to be sustained, it must be done on the basis of the particular construction of its several parts and the manner in which they are fitted together. Cf. Cambridge Trust Co. v. Coe, 1936, 66 App.D.C. 326, 87 F.2d 543.

An examination of the Kwikset knob shell, which is the part grasped by the hand in using it, discloses that the top edge of the shell is curved or curled[16] inwardly so as to fit tightly against a complementary concave area[17] at the top, outside edge of the insert. The cap of the knob consists of a disk with a rim or flange which is forced between the shell curl and the insert. As the flange is forced between the shell and the insert, the shell curl is forced away from the insert while at the same time the chamfered outer edge of the insert deforms the flange by forcing it to curve outwardly under the shell curl. The cap is thus held in place both by the relation of the interlocking surfaces of the cap flange and of the shell curl, and also by pressure against the cap flange caused by the spring-back of the shell curl toward the insert.

Under the provisions of the patent laws, a new and useful process is patentable. Title 35 U.S.C.A. § 31; see, also, Title 35 U.S.C.A., 1952 Rev., § 101. The district court has found that Kwikset's fitting or method of making a door knob is new and involves invention over the prior art, and we think the evidence supports the finding.

The district court further found that the knobs manufactured and sold by Hillgren infringed Kwikset's door knob patent in that they were mere "colorable variations" and "mechanical equivalents" of Kwikset's invention. While it is true that a district court's finding of infringement is generally considered to be a finding of fact that may not be set aside unless clearly erroneous,[18] "it is [also] well settled that where, as here, there is no dispute as to the evidentiary facts,

---

15. See, e.g., patents Nos. 242,922; 337,-093; 1,687,531; 2,430,727, at pages 888, 889, 891 and 893 of the Record on Appeal, respectively.

16. Referred to in the Kwikset claims 3 to 6 as "annular portion", in claim 2 as "inwardly directed flange" and in claim 1 as "curl". The district court in its findings refers to this part of the shell as the "annular portion".

17. This area of the insert is also referred to as an "annular portion" in the district court's findings 25 and 26.

18. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Faulkner v. Gibbs, 9 Cir., 1948, 170 F.2d 34, affirmed 1949, 338 U.S. 267, 70 S.Ct. 25, 94 L.Ed. 62.

and the record and exhibits enable us to clearly comprehend the nature both of the process patented and the alleged infringing process, the question of infringement resolves itself into one of law, depending upon a comparison between the two processes and the correct application thereto of the rule of equivalency. The testimony in this case was largely expository and descriptive of the elements and operation of the two processes and was not disputed." Kemart Corp. v. Printing Arts Research Lab., Inc., 9 Cir., 1953, 201 F.2d 624, 627, 628; United States v. Esnault-Pelterie, 1938, 303 U.S. 26, 30, 58 S.Ct. 412, 82 L.Ed. 625.

In the Hillgren knob the edge of the shell does not curl, but rather directly faces the insert. See diagram in margin.[19] Thus, the "curl" or "annular portion" [20] which is a distinguishing characteristic of the Kwikset knob, is absent from the Hillgren knob. Another difference between the two knobs is that while the Kwikset knob has a concave area on the insert which serves the dual purposes both of curving the cap flange under the shell curl and of establishing a contact area between the shell and the insert in their grasp of the cap flange, the concave area on the Hillgren insert is so located that it serves solely as a

die in the assembly process, as follows: The insert is placed within the shell. Then the cap is forced down upon the insert while the sides of the shell are forced laterally toward the insert. Under the dual pressure the Hillgren cap flange is forced between the shell and the curved portion of the insert, and is bent outwardly to form a groove, the top of which is the cap itself. Thus when the pressures on the cap and the shell are removed at the completion of the assembly process, the cap remains in place by means of a tongue-in-groove association formed between the cap and the shell edge.

To more clearly contrast the essentials of the two knobs, we summarize as follows: Both knobs utilize the insert as a die. To that extent they are similar. However, there is a substantial difference in the principles of construction of the two knobs which is reflected in the methods by which they are assembled, to-wit: In the Kwikset knob, it is important that initially there be a tight fit between the shell curl and the insert in order that sufficient spring-back be created in the shell curl to hold the cap in place. By way of comparison, in the assembly of the Hillgren knob there is a space between the insert and the shell edge through which the cap flange is forced and an inward lateral pressure

KWIKSET

HILLGREN

20. The Webster's New Collegiate Dictionary, 1951, 2nd Ed., defines "annular" as meaning "ring shaped". While the term "annular" was correctly employed by the claimant in his claims 3 to 6 and by the

district court in its findings 25 and 26, to describe the Kwikset shell, it would be inaccurate to extend that definition to the contact edge of the Hillgren shell.

490

is placed upon the shell to keep its edge in position while the cap flange is being shaped to embrace it.

The Kwikset knob patent is in a crowded field; therefore, its scope must be narrowly limited. Since the Hillgren knob construction is based solely upon the tongue-in-groove principle in such a way as to eliminate the need for spring-back pressure employed in the Kwikset knob to hold the cap in place, we conclude that the Hillgren knob does not infringe the Kwikset patent.

Reversed as to each judgment.