### GARCIA v. AMERICAN R. CO. OF PORTO RICO.

#### No. 3690.

Circuit Court of Appeals, First Circuit.
April 23, 1942.

Hugh R. Francis and Francis & Belaval, all of San Juan, P. R., for appellant.

Mariano Acosta Velarde, Federico Acosta Velarde, and Donald R. Dexter, all of San Juan, P. R., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This appeal is from a judgment for the defendant entered upon a directed verdict in an action brought to recover for personal injuries received when an automobile in which the plaintiff was riding as a paying passenger collided with one of the defendant's locomotives at a grade crossing. The plaintiff is a citizen and resident of Puerto Rico; the defendant is a corporation organized under the laws of the State of New York, but doing business in Puerto Rico. Jurisdiction is based upon diversity of citizenship and an amount in controversy, exclusive of interests and costs, in excess of the statutory amount.

The accident occurred in San Juan about 7 P.M. on December 21, 1937, at a point where a spur track of the defendant crosses a public highway known as Avenida Fernandez Juncos. At that point the tracks run approximately north and south and the highway approximately east and west. The automobile in which the plaintiff was a passenger was proceeding in an easterly direction from San Juan to Santurce; the locomotive with which it collided was moving from south to north. It was a small switching engine pulling two freight cars.

The highway at the point of the collision was paved with concrete in which the tracks were embedded so that their tops were flush with the travelled surface of the way. It is admitted that the crossing was not protected with gates, bars, chains or lights, the only warning to highway travellers that they were ap-

proaching a crossing being "stop, look and listen" signs posted beside the highway, and about eight feet above its surface, on each side of the crossing.

The defendant introduced substantial evidence that the locomotive approached the crossing at a speed only a little faster than a man would ordinarily walk; that its headlight, rear light and cab lights were burning brightly; that there was nothing to obstruct it from the view of highway travellers as it approached the crossing; that just before it reached the limits of the highway it stopped, or very nearly stopped, and a brakeman got down from its front running board and walked into the highway with a lighted hand lantern which he swung to warn approaching traffic; that seeing no such traffic nearby he signalled the locomotive ahead; that it came on and had almost reached the other side of the highway when the automobile in which the plaintiff was riding approached rapidly, swung over into the northerly side of the highway apparently in a vain attempt to pass in front of the locomotive, but failed to do so and ran with great force into its left front corner, denting the cylinder on that side and pushing it off the rails.

The plaintiff and those of his witnesses who were also passengers in the automobile (their testimony was corroborated in part by witnesses who were by-standers) testified to the effect that although they were in a position to see and hear as they approached the crossing, and although they were not then talking but were looking ahead, they saw no lights and heard no whistle or bell before the collision, but that the first warning they had of impending danger was when the brakes of the car were suddenly applied and it was swung sharply to the left. They all agreed that as they approached the crossing the car was being driven at a "normal" speed which one of them defined as "not too fast" and another described as between twenty and twenty-five kilometers per hour; that its headlights were on bright, but on the lower beam; that it was being driven on the right hand side of the road and that the driver seemed attentive and competent. The driver testified that as he approached the crossing, driving as above described, he suddenly saw the locomotive as a dark object emerging from the road side at his right onto the crossing immediately ahead of him; that he at once applied his brakes and veered to his left, but was unable to avoid colliding with it, and that as a result of the collision his car was carried by the locomotive over onto the northerly side of the highway and wrecked. He testified that the car he was driving was new and that its brakes and lights were in perfect condition.

The plaintiff contends that on the above testimony he is entitled to have a jury pass upon the question of whether or not the defendant was causally at fault for failing adequately to protect the crossing.

Laws of Puerto Rico, 1917, No. 70, Article 2(q), p. 448, provides, so far as here material, that railroad companies shall "construct and maintain chains, gates, or other suitable protective devices, at all grade crossings of insular public roads and at all such other public crossings as the commission (Public Service Commission) may designate," and Section 397 of the Political Code of Puerto Rico, Rev.St. & Codes 1913, § 3104, provides "That the term 'Insular roads' * * * shall be held to mean all those highways or public roads that have been or may be built, and are or shall be maintained by Insular funds." The plaintiff called the engineer in charge of the conservation of highways to the stand and he testified without contradiction that Avenida Fernandez Juncos had been constructed and was being maintained by the Department of the Interior with insular funds. It clearly appears that this expenditure of insular funds by the government of Puerto Rico has the sanction of law.[1] The District Court, however, in passing upon the defendant's motion for a directed verdict, took the position that the legislature of Puerto Rico "when they said Insular highways meant highways in the country, not in the cities, as we have in our state, state highways, but they are not treated as highways in the city limits, but as city streets. I think that is what they meant."

Undoubtedly the accident occurred within the city limits of San Juan, but we find nothing to support the view that

---

[1] Laws of Puerto Rico, 1917, No. 63, p. 402, 403; Laws of Puerto Rico, 1919, No. 72, p. 496; Laws of Puerto Rico, 1921, No. 21, p. 158; Laws of Puerto Rico, 1928, J.R. No. 31, p. 776.

Avenida Fernandez Juncos was not at that point an insular highway. The test laid down by the statute is not the location of a highway, but whether or not it was constructed or is being maintained by insular funds. Furthermore, we are constrained to reject the District Court's view by Laws of Puerto Rico, 1917, No. 49, p. 356 which provides, § 1: "That the Commissioner of the Interior is hereby directed to maintain for account of his department sections of road running through the urban zones of the towns" and (§ 2) "That the sections of roads which, by virtue of this Act, shall be maintained by the Department of the Interior, shall be considered as parts of insular roads and subject to present provisions of law for the maintenance and policing of the public roads of this Island." Thus it is apparent that the defendant, unless it provided "other suitable protective devices", violated the statute by failing to construct and maintain either gates or chains at the crossing where the accident occurred.

The defendant asserts that on all the evidence it must be found that a switchman walked into the highway ahead of the locomotive and there swung a lighted lantern; that the locomotive was brilliantly lighted and in clear view from the highway for several hundred feet before it reached the crossing; and that its whistle and bell were sounded; and on the basis of these alleged facts it contends that "other suitable protective devices" were provided at the crossing at the time of the accident. From the testimony adduced by the plaintiff, which we briefly summarized above, we cannot concede the factual basis for this contention. Since the plaintiff and his witnesses testified that they were in a position to see and hear and were attentive, their testimony has, in our view, some tendency to prove that the lights of the locomotive were not on, that its whistle and bell were not sounded, and that, if a switchman did walk into the highway ahead of the locomotive, he was, as he himself admitted, on the easterly side of it and so not in view of the driver of the car and the passengers in it as they approached. But, however this may be, the Supreme Court of Puerto Rico, in a case very similar on its facts to the instant one, definitely rejected the defendant's contention. In Dominguez v. P. R. Ry. Light & Power Co.,

19 P.R.R. 1034, 1038, 1039, that court said:

"Gates and chains are the means used to close any place and prevent passage, and when they are employed at a railroad crossing they close and prevent passage over the track. When the gates or chains are in place it is practically impossible to enter the crossing unless these are broken or jumped over, therefore they are a means of such a nature that when in place they prevent accidents and collisions, which is the object of the law in ordering their use. As was said in the case of Chicago & Alton R. R. Co. v. Wise, 206 Ill. 453, 69 N.E. 500, affirmed in 106 Ill.App. 174, the gates required by the statute are intended to serve as a warning as well as a physical obstruction. Therefore, when the law requires that chains, gates, or other suitable protective devices shall be placed at crossings of Insular public roads it is to be understood that such suitable protective devices shall be of a kind resembling such gates or chains in order to secure results similar to those which it was the intention of the legislators to obtain by means of the gates or chains * * *"

"Applying these principles to the case at bar, we must conclude that the person employed as gate-keeper by the defendant corporation to give warning to passers-by of the approach of trains by means of a flag is not an adequate protective device similar or equal to the chain or gate required by law, inasmuch as it does not obstruct or prevent physically an entrance to the track. Therefore, on the date on which the accident occurred the defendant corporation had not complied with the requirements imposed by law of placing chains, gates or other suitable protective devices at the crossing for the protection of passers-by, which failure to comply with the statutory provision constitutes negligence per se."

The question remains whether or not the defendant's fault was causal. It argues in its brief that "The train and engine in this case were already on the grade crossing and this was a warning by itself and hence the existence of gates or chains was immaterial." This argument is fallacious in that it assumes that the locomotive must be found to have been on the grade crossing blocking the highway an appreciable length of time before it was struck by the automobile in

which the plaintiff was riding. While there is evidence to support the conclusion that this was in fact the case, there is also evidence to the contrary. The driver of the automobile and the passenger who sat on the seat beside him both testified that just before the accident they were keeping an attentive lookout ahead and that the automobile was proceeding at a normal and reasonable speed on its own side of the highway, but that the first inkling they had of danger was when they suddenly saw the unlighted locomotive loom up immediately in front of them as a black object. If their testimony should be accepted as true, as it might be, it indicates that the locomotive, since it was moving, could have been on the crossing in front of the automobile for only an instant before the collision. Thus it did not provide in itself a warning equivalent to chains, gates or bars, since the latter must be set in place an appreciable length of time in advance of an approaching locomotive. Lopez v. R.R. 50 P.R.R. 1, 20. Furthermore, if the testimony of the driver and the other passengers should be accepted as true, as we have already said that it might, the locomotive could be found to have been unlighted and for that reason alone it would not itself give an adequate warning of its presence.[2]

The case of Rosello v. American R.R. Co., 38 P.R.R. 432, relied on by the defendant, is clearly distinguishable upon its facts. In that case the trial court found, and the appellate court therefore accepted as true, that although the crossing was provided with gates and chains they were not used at night when the accident under consideration in that case occurred, but "red lanterns were in place and lighted at the time of the accident; that the passenger coaches were well lighted and that the headlight of the engine illuminated the track for a distance of at least two hundred meters as the train moved toward the crossing; that the truck was heavily loaded and carried some six or eight passengers in addition to the driver; that immediately after the accident a broken guitar and the fragments of a bottle containing liquor were found in the wreckage; that the driver of the truck and several of his companions had been drinking intoxicating liquors; that the whistle was blown and the bell was rung at a proper distance before the arrival of the train at the crossing; that the crew of the truck were singing to the accompaniment of a guitar as the vehicle neared the crossing; that the train in question was a regular passenger train, running according to a fixed schedule, at the usual and ordinary rate of speed; that the driver of the truck had frequently traveled over the crossing and knew, not only that the chains were not used at night, but also that the train was due to pass at the hour when the accident occurred; that the said driver did not stop, look or listen, nor reduce the speed of the truck; and that the exercise of the slightest degree of care on the part of such driver would have informed him as to the impending danger and would have prevented the accident." Since the record in the case at bar contains no evidence of carousing on the part of the occupants of the automobile and since it contains evidence from which a jury might find that the crossing where the plaintiff was injured was infrequently and irregularly used; that it was not protected by lights; that the locomotive was unlighted; and that its approach was not heralded by any sounds from its whistle or bell, it is evident that the Rosello case is not in point.

We are of the view that upon the record in the case at bar it was for the jury to say, considering all the testimony, whether or not the driver of the car, as he approached the crossing, would have seen and heeded lighted gates had they been lowered to protect the crossing even though he did not see the locomotive itself.

The only questions which remain are, (1) whether or not the negligence of the driver, if any, is to be imputed to the plaintiff, and (2), whether or not the plaintiff was contributorily negligent himself in failing to see the impending danger and failing to warn the driver of it before the accident. As to the first question the law is well settled in Puerto Rico that the negligence of a driver of an automobile is not to be imputed to a passenger having no control

---

[2] Although the statute (Laws of Puerto Rico, 1917, No. 70, supra) is silent as to lighting at night, it is obvious that gates, bars, etc. must be then adequately lighted; otherwise, they would constitute hazards in themselves.

438

over its operation. Dominguez v. P. R. Ry., Light & Power Co., 19 P.R.R. 1034, 1040; Principe v. American Ry. Co., 22 P.R.R. 282, 288; Garcia v. American R. Co., 45 P.R.R. 738, 749 et seq.; Lopez v. American R. Co. 50 P.R.R. 1, 23. The second question can be as briefly disposed of. The cases cited above clearly establish that under the law of Puerto Rico a plaintiff riding in a vehicle under the control of another is entitled, in the absence of notice to the contrary, to rely upon the skill and prudence of his driver and is under no affirmative duty either to keep a constant lookout ahead or to warn his driver of every possible danger in their path.

The judgment of the District Court is vacated and the case is remanded to that court for a new trial, with costs to the appellant.