34 C.C.P.A.(Patents)

**Application of SMITH.**

**Patent Appeal No. 5311.**

Court of Customs and Patent Appeals.

June 3, 1947.

Harold J. Kinney, of St.Paul, Minn. (Carpenter, Abbott, Coulter & Kinney, of St. Paul, Minn., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This appeal from a decision of the Board of Appeals of the United States Patent Office involves the rejection of product claims 31 to 38, inclusive, of an application for a patent for "Iron Oxide Pigments and Method of Producing the Same." Nine method claims were allowed. Appellant in his brief has withdrawn the appeal as to claim 37 and, accordingly, that appeal will be dismissed.

Claims 31 and 38 are illustrative of the subject matter of the rejected claims and read as follows:

"31. As a new product of manufacture, substantially water-free red iron oxide pigments, which can be produced directly from iron ores or pyrites cinder and have substantially the same chemical composition on a moisture free basis as the iron ore or pyrites cinder aforesaid, comprising 70% to 90% $Fe_2O_3$, the remainder thereof being made up largely of silica, alumina, lime and magnesia and containing substantially no colored compounds other than $Fe_2O_3$, the said pigment product being further characterized by having luminosities and purities, when measured, and computed using I.C.I. illuminant C, which fall on a graph between the lines represented by the equations, $L = .1875P + .009$, $L = .1875 P - .0075$, $L = .110$ and $L = .075$, L and P representing luminosity and purity, respectively."

"38. As a new article of manufacture, substantially water-free red iron oxide pigments having luminosities and purities when measured by I.C.I. illuminant C, as

herein described, which fall on a graph between the lines represented by the equations $L = .1875P + .009$, $L = .1875 P - .0075$, $L = .110$ and $L = .075$, L. and P. represent luminosity and purity, respectively, said pigments being produced by the process defined in claim 25."

The art relied upon is the patent to Ledoux, 360,967, April 12, 1887.

The invention relates to pigments of iron oxide of various colors. They are produced by heating iron oxide containing material from which the pigments are obtained and depend for their color upon the type of iron oxide, or the like, employed as a starting material. Concentrated sulfuric acid is mixed with the ore and some water producing a reaction in which a substantial portion of the iron ore is converted into ferric sulfate. After the reaction is completed the mass, which is in fluid form, is discharged from the converter and forms, upon cooling, a granular solid, largely comprising ferric sulfate, which is then crushed and calcined into iron oxide. In order to produce a high-grade iron oxide pigment it is said that at least 70 percent of the iron ore must be converted to ferric sulfate.

The patent to Ledoux relates to a process of manufacturing a pigment, which is red oxide of iron. It discloses a process somewhat similar to that of appellant. Instead, however, of showing a fluid batch of reacted material, the patent discloses that a pasty solid mass is obtained after reaction, consisting principally of ferric sulfate, which is then crushed and calcined into the final product in the form of impalpable powder.

It is said that the pigments produced by appellant's method are of brilliant shades and bright tones, the color characteristics of which may be defined by properties of purity, luminosity and dominant wave length, as described in Hardy's "Handbook of Colorimetry," published by the Massachusetts Institute of Technology, using an illuminant known as "I.C.I. illuminant C." The application contains a graph in which the luminosity is plotted against the purity for the pigments of the invention and when measured by the said illuminant C, appear as set out in the equations in claim 31.

The Primary Examiner noted that the particular shade and brilliance of appellant's pigment depends upon the type of ore selected and pointed out that the rectangular areas on the graph indicate the range of color characteristics of the pigments from such selected starting material.

The examiner held claim 31 to be unpatentable over the pigment produced by the process of the Ledoux patent. He stated that it was not significant whether or not the pigment can be produced from iron or pyrites cinder, as is stated in the claim, observing that the pigment of the reference is produced from iron ore and would have substantially the same chemical composition as the ore from which it is derived, as recited in claim 31. With respect to the recitation in that claim that the pigment comprises 70 percent to 90 percent $Fe_2O_3$ (iron oxide) he said that, although the proportion of iron oxide in the pigment of the Ledoux patent is not set out, the statement in the patent that "the mass now consists, principally, of crude amorphous sulfate of iron, together with a silicious gangue, and, probably, some undecomposed oxide," makes it clear that the proportion of iron oxide is high. The sulfate of iron in the Ledoux patent is subsequently completely converted into iron oxide.

The examiner held that, even though appellant is correct in his argument that the proportions of acid and ore disclosed by the reference would produce a pigment that would not contain the percentage of iron set out in claim 31, the greater amount of such iron oxide in the product of appellant does not patentably distinguish it over the product of the Ledoux process, adding that the difference between the two products is merely a matter of degree.

As to the recitation in the claims of the presence of silica, alumina, lime, and magnesia, the examiner stated that those substances are derived from the iron ore and are carried along with the iron content throughout the process and in like manner those substances would be present in the final product of Ledoux as "silicious gangue."

The examiner mentioned that the physical characteristics of luminosities and puri-

ties in the claims are not disclosed in the Ledoux patent, but even though it were assumed that the pigment of the patent does not meet the range of luminosities and purities characterizing appellant's product, the only difference between the two products is one of degree.

An affidavit by a skilled chemist was filed on behalf of appellant. · It was considered by the examiner, who held that it merely set out the opinion of the affiant as to certain advantages of appellant's process over that of Ledoux and that the only comment on the Ledoux product appearing in the affidavit was "it has never proven attractive commercially."

The examiner held that no data appeared from which the characteristics of appellant's pigment and those of Ledoux might be compared and, further, that there was no invention in the concept of an iron oxide pigment of a cleaner, brighter shade than that produced by the Ledoux process, although such characteristics are obviously desirable.

The examiner deemed that even without reliance upon the reference, the pigment of appellant is unpatentable. He stated that it was substantially admitted in the affidavit that there are well known pure or substantially pure iron oxide pigments far superior in their properties to the pigment of appellant and that the mere fact the product of appellant is derived from iron ore and contains gangue impurities does not clothe the product with any advantage except that it can be more cheaply produced. He held that that advantage resides entirely in the process.

The examiner rejected claims 32 to 34, inclusive, which depend upon claim 31, but define more specific areas in the graph, for the reasons given in rejecting claim 31. He applied the same reasons for rejecting claims 35 and 36, also dependent upon claim 31, but defining characteristics of the pigment when used in a lacquer.

In rejecting claims 37 and 38 it was the opinion of the examiner that the pigment was described by the process of making it. He reasoned that such description does not lend patentability to the claims if it creates no patentable distinction in the product itself. He, therefore, rejected those claims for the same reasons he employed in the rejection of the other rejected claims. He further stated that since the product of appellant can be adequately defined, as it is in claims 31 to 36, inclusive, without reference to process, that claims 37 and 38 are unpatentable because they define the pigment in the terms of the process.

The Board of Appeals, in its decision, held there is nothing patentable in the selective use of several ores, or a selected ore, as raw material for the purpose of obtaining a proper range of shades, or a particular shade, over the final pigment of the Ledoux patent. The board stated that the process disclosed in the patent might · result in an incomplete conversion of the iron oxide to ferric sulfate, but such difference, it held, would be merely one of degree. The board was of opinion that any skilled chemist would "as a matter of course" modify the proportions disclosed in the Ledoux patent. If it was desired to obtain a difference in the color of the Ledoux product, such chemist would know that substances such as manganese and other colored oxides would affect the shade thereof.

 It is trite to say that patentability cannot properly attach to a product unless it differs inventively from products disclosed by the prior art. The mere making of an article by a new process does not render it patentable unless the article itself is a product of invention. In re Lincoln et al., 143 F.2d 965, 31 C.C.P.A., Patents, 1222; In re Brawn, 77 F.2d 362, 22 C.C.P.A., Patents, 1239.

Appellant has been allowed, as heretofore noted, many process claims, but unless the product of his process is patentably different from that shown by the reference, such product claims may not be allowed.

██ We are of opinion that the holdings of the tribunals of the patent office are proper. We find nothing in the record to indicate that there is any critical difference between appellant's product and that of the reference.

The statement in the affidavit that the percentage of iron converted into ferric oxide by the Ledoux patent will be much less than the minimum percentage set out in the claims cannot be considered to be more than a speculation because it is not shown that the process of the reference was used and, when so used, produced such lower percentage.

As has been previously pointed out, the reference discloses a substantially water-free red iron oxide pigment described as "an impalpable powder." It has substantially the same chemical composition as the materials from which it has been directly produced. Merely because a pigment may have the same composition as the ore from which it is made does not make it a better pigment.

There is no doubt that substantially pure pigments of iron oxide, well known in the art, are superior to those containing 70 percent to 90 percent of that oxide. It appears to us, therefore, that the maximum range of such percent defined by appellant's claims is not critical. Furthermore, it has not been shown that the silica, alumina, lime and magnesia content of appellant's product is critical, nor that criticality attaches to the iron oxide being the only colored material in the pigment. There is nothing to show that the pigment of Ledoux contains any colored substance other than the iron oxide.

While the product of the Ledoux process is said to be commercially unattractive, there is nothing in the record to show the product of appellant has enjoyed any greater commercial success.

In our opinion appellant has produced a low-cost, impure pigment by a process held by the Patent Office to be inventive. The impurities in his product are neither desirable per se, nor do they improve it.

Since we agree with the tribunals below that the pigment of appellant possesses nothing inventive over the product of the prior art, it is not necessary to discuss other issues.

The appeal as to claim 37 is dismissed and the decision of the board affirmed in all other respects.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.