E. H. TATE COMPANY, Plaintiff,

v.

JIFFY ENTERPRISES, INC., Defendant.

JIFFY ENTERPRISES, INC., Plaintiff,

v.

SEARS, ROEBUCK & CO. and E. H. Tate Company, Defendants.

Civ. A. Nos. 25486, 25504.

United States District Court
E. D. Pennsylvania.
July 21, 1961.

Arthur H. Seidel and Marvin Comisky, Philadelphia, Pa., for Jiffy Enterprises, Inc.

Cedric W. Porter and John J. Moss, Boston, Mass., and Henry N. Paul and Robert B. Frailey, of Paul & Paul, Philadelphia, Pa., for E. H. Tate Co.

These cases were consolidated for trial. E. H. Tate Company is plaintiff in one case and intervening defendant in the other. Tate in C.A. 25,486 seeks a declaratory judgment that Margulis patent No. 2,809,001 (October 8, 1957) owned by Jiffy Enterprises, Inc., for a hanger is invalid. Jiffy in C.A. 25,504 sued Sears, Roebuck & Co. for infringement. Sears is one of Tate's customers and it is defending on behalf of Sears. The issue in the two cases is the same: the validity of Margulis '001.[1] It appears

1. Tate originally relied upon a defense of license, but that issue was abandoned.

The suits were tried as one—an orthodox patent suit by Jiffy vs. Tate for infringe-

infringement is conceded, since the device sold by Tate is a "Chinese copy" of the device in suit.[2]

The device in suit is a nail-less picture hanger adapted to be supported on a wall without the application or use of a nail, screw, or other element which penetrates the supporting surface.[3] The picture hanger "comprises a strip of fabric which is provided with an adhesive coating on one side, a flat supporting bar juxtaposed to a fold line on the strip of fabric, with its major faces juxtaposed to a face of the fabric. A line of stitching is provided to enclose the supporting bar. There are aligned apertures in the faces of the hem on the strip of fabric and the support bar. A hook having an integral tubular flange is provided with the flange extending from one side of the shank of the hook through the aligned apertures. The end of the tubular flange remote from the shank is swaged over so as to provide a completely operative and assembled picture hanger, whereby the hook can be swiveled in a plane parallel to the plane of the support bar."[4] Plaintiff Jiffy so describes the structure in suit.

Defendant Tate describes the structure substantially the same but with, perhaps, more specificity: Margulis '001 is for an Adhesive Coated Cloth Picture Hanger which, as shown in the patent,[5] shows a cloth strip 11, rectangular in shape, coated on its rear with a water activated glue, and folded to form a front flap 14 and a rear flap 15,[6] and an intermediate hem defined by the fold line 13 and a transverse line of stitching 16. A metal bar 17 is positioned within the hem, and the bar 17 is provided with a central opening 18. *The hook 19 provided with an integral flanged eyelet 20*[7] is the asserted inventive feature and is described in the patent[8] as:

"A hook 19 which may be of metal or the like, such as brass, is pivotally secured upon support bar 17, by having a perpendicular integral tubular flange 20 inserted through hook-receiving opening 18 of support bar 17 and mating openings 26 and 27 on the juxtaposed faces of the hem. The rear end of flange 20 which projects somewhat beyond the rear opening 27 of the hem is flared, swaged or peened so as to retain hook 19 on hanger 10. This is readily accomplished, as tubular flange 20 is of relatively thin cross-section compared with the shank portion 21 and bight or bill portion 22 of hook 19. Hook 19 is secured in position by the flared outwardly turned rear portion of tubular flange 20 and the rear face of shank portion 21 adjacent the flange. The outside diameter of tubular flange 20 is smaller than the diameter of hook-receiving opening 18 and the flared portion of flange 20 does not engage strip 11 so tightly as to prevent pivotation of hook 19."

---

ment. Only two witnesses testified at trial: 1. Mr. Gonda, an employee of plaintiff's attorney, who testified as an expert, and 2. Mr. Goodman, a machine manufacturer, who made the machine for Jiffy for assembling the parts for making the patented devices. Patentee Margulis was not called as a witness. Jiffy relies on parts of the depositions of Frank E. B. Tate, President of E. H. Tate Company, and Sydney Miller, a buyer of the adhesive picture hangers in suit.

Defendant Tate offered no witnesses at trial, but relied on its Book of Prior Art Patents (DX 1); parts of the Leonard Schram deposition (Tr. 97–104); the John Larson deposition (DX 3); and the

Envelope of Exhibits attached to his deposition, consisting of catalogues and sample books (DX 4); the cross-examination in the Sydney Miller deposition (Tr. 89–95); the prior Margulis patent No. 2,-647,711 (Tr. 83); and the File History of Margulis '001 (Tr. 83).

2. PX 2, Nos. 1–4.

3. PX 9, Nos. 1 and 2.

4. PX 10, Nos. 1–3.

5. Figs. 1 to 6.

6. Fig. 2.

7. Fig. 3.

8. Col. 2, l. 19–36.

The purpose of providing the hook 19 with an integral flanged eyelet 20 is to permit the picture hanger to be more easily assembled and manufactured on a machine. This advantage is described in the patent:[9]

"This invention has as an object the provision of an improved wall hanger in which all of the advantages possessed by the construction set forth in my Letters Patent 2,-647,711 are secured, yet which is of simpler construction and easier to manufacture."

Margulis '001 has five claims. Claim 1, which may be regarded as typical, reads:

"1. A nail-less hanger for pictures and the like including a flexible strip coated on its rear face with an adhesive *coating* and *being* overlapped upon itself along a transverse line of fold to provide a hem extending across the width of the strip, aligned openings in both faces of said hem, a transversely extending support bar positioned within the hem with its major faces juxtaposed with the faces of said hem, an opening in said support bar aligned with the aligned openings in the hem, a hook, said hook having an integral tubular flange extending generally perpendicularly from its upper end portion through the aligned openings in the hem and support bar, the end portion of said tubular flange remote from the remainder of the hook being flared outwardly and juxtaposed to its neighboring hem face, said tubular flange having an outside diameter sufficiently less than the diameter of said aligned openings in the strip and support bar, so that said hook may be swung in a plane closely paralleling the plane of the strip."

The patent in suit refers to previous Margulis patent No. 2,647,711 (August 4, 1953) which is likewise for an Adhesive Coated Cloth Picture Hanger. In earlier Margulis '711, the hook was swivelly mounted on the metal support bar 16 by means of a separate hollow rivet or eyelet 23.[10] In the earlier patent, it is thus described:[11]

"The metal hook 19 is secured in position by means of a hollow metal rivet 23 which extends through the hook opening 21, the opening 17 in the bar 16, and appropriate openings in the strip 11. The size of the opening 21 in the shank 20 and the inside and outside diameters of the rivet 23 are arranged so that the hanger hook is free to pivot to different positions as indicated by the broken line position of the hook in Figure 1."

Tate argues the sole significant difference between prior Margulis '711 and later '001 is that in the former the hook 19 is swivelled on a *separate* rivet or eyelet 23, inserted through the hole 17 in the metal support bar 16, while in '001 the hook 19 is provided with its integral flanged eyelet 20 which, in turn, is swivelly mounted in the hole 18 in the metal support bar 17. Thus, defendant Tate claims the function of the separate rivet 23 in the first patent and the integral flanged eyelet in the patent in suit ('001) is exactly the same: To provide a swivelled mounting for the picture-supporting hook in the metal support bar.

LEAHY, Senior District Judge.

1. The sole perceptible difference between Margulis '711 and Margulis '001 is the substitution of a hook with an integral flanged eyelet for a hook which swivels on a separate rivet or eyelet. This combination or integration of two separate pieces, a hook and eyelet, into one, a hook with an integral flanged eyelet, is the alleged invention embodied in the patent in suit. Jiffy claims that by combining the hook and eyelet into an integrated part certain advantages are achieved in the manufacture and assembly of the type of nail-less hanger in suit.

9. Col. 1, l. 33–37.

10. Figs. 2 and 5.

11. Col. 3, l. 15–23.

Jiffy emphasizes it is these assembly problems that the alleged invention is intended to solve.[12] But, the patent in suit is a product patent, not a patent on a process of manufacture. It appears '001 attempts, in effect, to patent a process of manufacture by patenting the end product of that process. Slight changes made on the product which result in advantages in the process of manufacturing will not, alone, confer patentability on the product. Additional advances in the character or utility of the product itself are required.[13] To test the validity of defendant's patent, e. g., additional advances in the character or utility of the product itself, it must first be determined if the patented device embodies any advances over the prior art and, moreover, if such advance passes the test of invention whether the subject matter would not have been obvious to one skilled in the art to which the invention pertains at the time it was made.[13a]

2. Principal prior art for the patent in suit is the nail-less adhesive picture hanger of Margulis '711. Defendant asserts that the '001 picture hanger may be structurally distinguished from the '711 hanger because:

"(1) It is simpler since it includes only two metal members.

"(2) It does not include a rivet.

"(3) The wall thickness of the integral flange is less than the wall thickness of the shank of the hook.

"(4) The hole in the shank of the hook must be smaller than the hole in the bar and need not be present at all.

"(5) The integral flange extending from the shank of the hook rotates relative to the bar and acts as a bearing for the hook whereas the rivet in the prior art did not rotate.

"(6) The picture hanger of the present invention is lighter in weight.

"(7) The picture hanger of the present invention is thinner in transverse cross-section through the integral tubular flange.

"(8) There are no metal rubbing surfaces in the picture hanger of the present invention." [14]

These structural differences, it is claimed, result in the following advantages:

"(1) The hook is now easier to rotate.

"(2) The overall thickness of the picture hanger has been decreased

---

12. Post Trial Brief of Jiffy Enterprises, Inc., pp. 10–11; Reply Brief, p. 1: "The record clearly shows that a problem existed with the picture hanger of the prior art (56–58 of the record transcript)."

Testimony by G. F. Goodman on the difficulties attendant to assembling the '711 picture hanger. Tr. pp. 56–58.

Col. 1, l. 33–37 of 2,809,001:

"This invention has as an object the provision of an improved wall hanger in which all of the advantages possessed by the construction set forth in my Letters Patent 2,647,711 are secured, yet which is of simpler construction and easier to manufacture."

13. Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Cochrane v. Badische Anilin & Soda Fabrik, 111 U.S. 293, 4 S.Ct. 455, 28 L. Ed. 433; Cambridge Trust Co. v. Coe, 66 App.D.C. 326, 87 F.2d 543; General Elec-

tric Co. v. Jewel Incandescent Lamp Co., 3 Cir., 146 F.2d 414; Application of Smith, 34 C.C.P.A. 1202, 162 F.2d 466.

13a. Zephyr American Corp. v. Bates Mfg. Co., 3 Cir., 128 F.2d 380, at page 383, where Jones, J., wrote: "The utilization of an expedient common to many diverse arts, of itself, amounts to no more than the exercise of mechanical skill."

See also: L. B. Smith, Inc. v. Hughes, D.C.E.D.Pa., 190 F.Supp. 787; Dollac Corp. v. Margon Corp., 3 Cir., 275 F.2d 202; Sperry Rand Corp. v. Ronson Service, Inc., D.C.E.D.Pa., 159 F.Supp. 3; Nachtman v. Jones & Laughlin Steel Corp., D.C.W.D.Pa., 134 F.Supp. 392; Berghane v. Radio Corp. of America, D.C. Del., 116 F.Supp. 200, 205.

14. Post Trial Brief of Jiffy Enterprises, Inc., p. 9.

so that now it is easier to interlock an eye of one picture hanger with the bill of the hook of another picture hanger in the manner shown in Figure 7 of patent 2,647,711 while having the eye and bill of the hooks identical in size.

"(3) It is now possible to mechanize the manufacture of the picture hanger of the present invention by use of automation thereby increasing the speed of production. Prior to the present invention, eighty picture hangers were manufactured per minute with four girls working on the production line. After the present invention, and as a direct result thereof, it is possible for a machine to produce more than two hundred picture hangers per minute with part-time attendance by one girl.

"(4) It is easier to manufacture the wall hanger of the patent in suit since fewer steps are needed, and the bore of the tubular flange extending from the shank of the hook is made at the same time as the hook.

"(5) The picture hanger of the patent in suit is cheaper to manufacture.

"(6) Due to the lighter weight, the picture hanger of the patent in suit reduces the shipping costs.

"(7) The picture hanger of the patent in suit is provided with a hook which will rotate easier.

"(8) The picture hanger of the patent in suit eliminated an alignment problem associated with the prior art.

"(9) The thinner walled tubular flange facilitates swaging of the

flange so as to maintain the picture hanger in assembled relationship.

"(10) The picture hanger of the patent in suit resolved problems associated with the production of prior art picture hangers such as jamming, misalignment, etc." [15]

Items 3, 4, 5, 8, 9 and 10 are advantages which accrue to the process of manufacturing the product. They cannot constitute patentable features of a product patent. Item 7 restates the advantage listed in Item 1. Of the advantages claimed by defendant, three may possibly support a claim of invention, viz.: these are—lighter weight, greater hook mobility, and a decrease in the overall thickness of the picture hanger, making it easier to interlock the eye of one picture hanger with the bill of the hook of another. Upon examination of the two hangers, constructed under old '711 and new '001, it is apparent the claimed advantages are not, in fact, there. Apart from the substitution of a hook with an integral flange for a hook and eyelet, the two hangers are structurally almost identical. Any difference in weight, mobility of the hook, or thickness of the hanger is, at best, negligible. At bottom, '001 substitutes one piece as the functional equivalent of a part which was formerly made in two pieces. *This is the only suggested advance embodied in the '001 hanger.* The substitution of functional equivalents, albeit one piece for two, does not constitute an advance in the art.[16] For this reason alone '001 does not embody any new concept which might achieve the dignity of invention. But, even beyond that, I would conclude the change embodied in '001 was anticipated by the other prior art.

■ 3. The prior art may be segregated into two parts; the old Margulis '711 patent, which has been described,

15. Ibid. pp. 10–11.

16. Welsh Manufacturing Co. v. Sunware Products Co., 2 Cir., 236 F.2d 225. See Walker on Patents (Deller's Edition), p. 196: "Ordinarily, uniting several parts of an existing device into an integral construction, or in making in several parts what was formerly in one, involves no more than the exercise of mere mechanical skill." (Multiple cases cited.)

and 19 other patents [17] showing Lacing Hooks or Clasps having hooks which have integral tubular flanges. True, Margulis '711 was cited by the Patent Examiner as part of the prior art. However, the examiner did not cite as prior art the nineteen Lacing Hook patents. Jiffy now contends it is outside the scope of the other prior art and such should not now be considered by this court. To ascertain whether this particular art is to be considered analogous to the art sub judice, heed must be given not merely to physical differences but particularly to the differences in the posed problems and the means and methods of solving them.[18] Under this test the Lacing Hook patents should be considered, here, as part of the prior art.[19]

■ 4. The general structure of the patented hanger in suit was anticipated by prior Margulis '711. As stated earlier, the sole perceptible difference between the two structures is the substitution of a hook having an integral tubular flange for a hook and a rivet or eyelet. The securing of a hook in a given material by means of an integral tubular flange so that the hook will sustain or resist an opposing force exacted upon it is manifestly anticipated by the lacing patents, supra. None of the lacing hook patents discloses a hook having an integral tubular flange that swivels. However, swiveling is caused by making the tubular shank slightly smaller than the hole it is mounted in and the swage of the flange larger than the circumference of the hole. To make this simple adjustment is within the competence of an ordinary mechanic. Since the structure and the use of a hook having a tubular flange appear in the prior art, the combination of these is the only possible advance which might achieve patentability. This combination is patently not patentable. To attain patentability over the prior art, a combination of old and familiar elements must produce a result which "is surprising or unexpected, i. e., when the whole is greater than the sum of its parts." [20]

| 17. | Patent No. | Date | Patentee | Title |
|---|---|---|---|---|
| | 227,094 | May 4, 1880 | Church, H. A. | Lacing Hook |
| | 229,253 | June 29, 1880 | Humphreys, C. I. | Sheet-Metal Lacing Hook |
| | 245,573 | Aug. 9, 1881 | Smith, S. N. | Lacing Hook |
| | 258,532 | May 23, 1882 | Goddu, L. | Blank for Lacing Studs |
| | 273,707 | Mar. 13, 1883 | Bray, M. N. | Lacing Hook |
| | 433,689 | Aug. 5, 1890 | Mather, A. C. | Glove Fastening |
| | 438,113 | Oct. 7, 1890 | Peck, I. F. | Lacing Stud |
| | 449,449 | Mar. 31, 1891 | Peck, I. F. | Lacing Hook |
| | 451,694 | May 5, 1891 | Keith, E. L. | Laced Boot or Shoe |
| | 685,307 | Oct. 29, 1901 | Stowell, H. F. | Button |
| | 763,177 | June 21, 1904 | Haefele, J. F. | Shoe Fastener |
| | 769,329 | Sept. 6, 1904 | Streed, E. E. | Lacing Stud |
| | 783,949 | Feb. 28, 1905 | Harden, C. H. | Shoe Lacing Stud |
| | 892,019 | June 30, 1908 | Upson, C. H. | Lacing Hook |
| | 1,056,020 | Mar. 18, 1913 | Graham, W. F. | Clasp |
| | 1,215,708 | Feb. 13, 1917 | Rosenwasser, M. | Hook for Shoe Laces and the Like |
| | 12,141 | Jan. 18, 1881 | Smith, S. N. | Lacing Hook |
| | 25,837 | July 28, 1896 | Kempshall, E. | Lacing Hook |
| | 34,653 | June 11, 1901 | Griffiths, S. | Shoe Lace Fastener |

---

18. Radiator Specialty Co. v. Buhot, 3 Cir., 39 F.2d 373; Baldwin-Lima-Hamilton Corp. v. Tatnall Measuring Systems Co., D.C.E.D.Pa., 169 F.Supp. 1.

19. The use of a hook having an integral tubular flange in these prior art patents is exactly the same as the use in the patent in suit, although in the first instance, the hook is used to support a lacing while in the second it is used to support a picture.

20. Tinnerman Products, Inc. v. George K. Garrett Company, D.C.E.D.Pa., 185 F.Supp. 151, at page 155. See also; Gen-

Such a result is not attained by the combination embodied in Margulis '001. The hanger disclosed there was anticipated completely by the prior art and is, therefore, invalid for lack of invention.

5. Commercial success, or imitation, cannot alone confer patentability on a product where invention itself is clearly lacking.[21] Jiffy, by an apparent non sequitur, seeks to cast its case, a garden variety patent infringement suit of a simple structure, in an epic mold. "If," it argues, "the patent in suit is declared invalid * * * then the patent office must stop issuing patents on simple devices like the adhesive cloth picture hangers."[22, 23] Such a profound result, all but frightening,[24] is improbable. It does not, in this instance, deter a decision the patent in suit is invalid.

Orders may be submitted in the Jiffy v. Sears case for dismissal of the complaint, and for declaratory judgment in Tate v. Jiffy.

## Findings of Fact

1. These two suits have been consolidated for trial, as both involve the validity of the same Margulis patent for an Adhesive Cloth Picture Hanger. C.A. 25,486 seeks a declaratory judgment that Margulis '001 is invalid for lack of invention. The existence of a controversy is not disputed.

2. C.A. 25,504 is a suit for infringement of the same Margulis patent against Sears, Roebuck & Co., which suit is openly defended by E. H. Tate Company on behalf of its customer.

3. The patent in suit is United States Patent 2,809,001 which issued on October 8, 1957 on patent application Serial No. 434,924 filed on June 7, 1954 by Joseph M. Margulis, and assigned to plaintiff Jiffy Enterprises, Inc.[1]

4. For simplicity the two suits have been tried as a straight patent infringement suit brought by Jiffy Enterprises,

---

eral Electric Co. v. Jewel Incandescent Lamp Co., 3 Cir., 146 F.2d 414; Application of Smith, 34 C.C.P.A. 1202, 162 F.2d 466; Electric Vacuum Cleaner Co. v. P. A. Geier Co., 6 Cir., 118 F.2d 221; Ranco, Inc. v. Gwynn, 6 Cir., 128 F.2d 437; Great Atlantic and Pacific Tea Co. v. Super Market Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

21. Commercial Success: Eskimo Pie Corporation v. Levous, 3 Cir., 35 F.2d 120; Electroline Co. v. Reliable Electric Co., 7 Cir., 101 F.2d 380.
Imitation: Goldman v. Bobins, 7 Cir., 245 F.2d 840.

22. Post Trial Brief of Jiffy Enterprises, Inc., p. 8.

23. As long ago as 1882, Mr. Justice Bradley suggested this is precisely what the Patent Office should do. He wrote (Atlantic Works v. Brady, 107 U.S. 192, at page 200, 2 S.Ct. 225, at page 231, 27 L.Ed. 438):
"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufacture. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."
See also: Justice Black's dissent in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Great Atlantic and Pacific Tea Co. v. Super Market Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162; and Judge Hastie in Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971.

24. Learned Hand, (S. J.) has at times called this an argument *in terrorem*. In the light of administrative history, it is only the isolated judicial finger in the dike that stops momentarily the flow of gadget patents.

1. Jiffy's Exhibits Nos. 1 and 2.

Inc., against E. H. Tate Company, and the parties have been treated as plaintiff and defendant, respectively.

5. Jiffy Enterprises, Inc., is a Pennsylvania corporation and is a manufacturer of Adhesive Cloth Picture Hangers and owns the patent in suit.

6. E. H. Tate Company is a Massachusetts corporation, and manufactures a line of Ten Cent Store items, of which one is an Adhesive Cloth Picture Hanger charged to infringe Margulis '001.

7. Margulis '001 is for an Adhesive Coated Cloth Picture Hanger which, as shown in the patent [2] shows a cloth strip 11, rectangular in shape, coated on its rear face with a water activated glue—and folded on itself to form a front flap 14 and a rear flap 15,[3] and an intermediate hem defined by the fold line 13 and a transverse line of stitching 16. A metal support bar 17 is positioned within the hem, and the bar 17 is provided with a central opening 18. The alleged inventive feature—the hook 19 provided with an integral flanged eyelet 20 [4] is thus described in the patent: [5]

"A hook 19 which may be of metal or the like, such as *brass, is pivotally secured upon support bar 17, by having a perpendicular integral tubular flange 20 inserted through hook-receiving opening 18 of support bar 17* and mating openings 26 and 27 on the juxtaposed faces of the hem. The rear end of flange 20 which projects somewhat beyond the rear opening 27 of the hem is flared, swaged or peened so as to retain hook 19 on hanger 10. This is readily accomplished, as tubular flange 20 is of relatively thin cross-section compared with the shank portion 21 and bight or bill portion 22 of hook 19. Hook 19 is secured in position by the flared outwardly turned rear portion of tubular flange 20 and the rear face of shank portion 21 adjacent the flange. The outside diam-

eter of tubular flange 20 is smaller than the diameter of hook-receiving opening 18 and the flared portion of flange 20 does not engage strip 11 so tightly as to prevent pivotation of hook 19." (Emphasis added.)

The purpose of providing the hook 19 with an integral flanged eyelet 20 is to permit the Picture Hanger to be more easily assembled and manufactured on a machine.

This advantage is thus described in the patent: [6]

"This invention has as an object the provision of an improved wall hanger in which all of the advantages possessed by the construction set forth in my Letters Patent 2,-647,711 are secured, yet which is of simpler construction and easier to manufacture."

8. The Margulis patent in suit has five claims, of which Claim 1, which may be regarded as typical, reads as follows:

"1. A nail-less hanger for pictures and the like including a flexible strip coated on its rear face with an adhesive coating and being overlapped upon itself along a transverse line of fold to provide a hem extending across the width of the strip, aligned openings in both faces of said hem, a transversely extending support bar positioned within the hem with its major faces juxtaposed with the faces of said hem, an opening in said support bar aligned with the aligned openings in the hem, *a hook, said hook having an integral tubular flange extending generally perpendicularly from its upper end portion through the aligned openings in the hem and support bar,* the end portion of said tubular flange remote from the remainder of the hook being flared outwardly and juxtaposed to its neighboring hem face, said tubular flange having an outside

2. Figs. 1 to 6.

3. Fig. 2.

4. Fig. 3.

5. Col. 1, l. 19–36.

6. Col. 1, l. 33–37.

diameter sufficiently less than the diameter of said aligned openings in the strip and support bar, *so that said hook may be swung in a plane closely paralleling the plane of the strip.*" (Emphasis added.)

9. The principal prior art relied on is previous Margulis patent No. 2,647,711 (August 4, 1953) for a similar Adhesive Coated Cloth Picture Hanger. But in this prior Margulis patent, the hook 19 was swivelly mounted on the metal support bar 16 by means of a *separate* hollow rivet or eyelet 23 [7]—thus described in the patent: [8]

"*The metal hook 19 is secured in position by means of a hollow metal rivet 23 which extends through the hook opening 21, the opening 17 in the bar 16, and appropriate openings in the strip 11. The size of the opening 21 in the shank 20 and the inside and outside diameters of the rivet 23 are so arranged so that the hanger hook is free to pivot to different positions as indicated by the broken line position of the hook in Figure 1.*" (Emphasis added.)

10. The sole significant and perceptible difference between these two patents is that in prior Margulis '711, the hook 19 is swivelled on a *separate* rivet or eyelet 23, inserted through the hole 17 in the metal support bar 16; while in Margulis '001 (the patent in suit) the hook 19 is provided with its integral flanged eyelet 20, which in turn is swivelly mounted in the hole 18 in the metal support bar 17. The function of the separate rivet 23 in the first patent and the integral flanged eyelet in the patent in suit is exactly the same: e. g., to provide a swivelled mounting for the picture-supporting hook in the metal support bar. The separate rivet and the integral flanged eyelet are full mechanical equivalents of each other.

11. It is not disputed (as Jiffy contends) it facilitates and simplifies the assembly of the hook in mounting it in the metal support bar 17 for it to have an integral flanged eyelet, instead of a separate eyelet or rivet, in manufacturing the hanger in machine operations. But, Tate contended that making the hook and eyelet in one piece was an obvious expedient and, the Court finds, Tate is right that this does not constitute invention—in view of the established prior art, which shows it to have been a common practice in industry to make hooks with integral flanged eyelets for many purposes.

12. There is no evidence in Jiffy's case that efforts had been made over a period of time to find a way of combining the hook and eyelet in its Adhesive Picture Hanger, nor that a problem existed as to how it could be done. When the advantage of making the hook and eyelet one piece became apparent, the solution was obvious.

13. In obtaining the Margulis patent in suit, Margulis' attorney made the following representations to the Patent Office: [9]

"The subject invention is a marked improvement over the hanger of Margulis patent 2,647,711. Not only has the applicant found (through dint of manufacturing upwards of a total of one hundred million cloth picture hangers of the subject and patented variety), that the subject construction is easier to manufacture, but also applicant has found that actually it is a better hanger. In fact, applicant has virtually stopped manufacturing the hanger of his patent, and is making the subject hanger in quantities of several hundred thousand per week. Thus, the subject hanger may be made in fewer steps than the hanger of the Margulis patent, it not being necessary to insert an eyelet through the supporting bar, hinge a hook on the eyelet and then ream both ends of the eyelet, but merely to insert the hook-eyelet through the supporting bar

---

7. Figs. 2 and 5.

8. Col. 3, l. 15–23.

9. File History p. 12 (PX 1).

and ream the end remote from the hook.

"Moreover, malfunction of the hanger through slippage of the hook off the front end of the hanger is obviated, a distinct improvement over the Margulis patent. As a practical matter the facile insertion of the hook onto the eyelet and the subsequent reaming of both ends of the hook is a relatively difficult manufacturing operation to perform. If the front end of the eyelet is not reamed well there is danger of slippage of the hook from the eyelet. If it is reamed flush against the hook, facile rotation of the hook is hindered."

This argument appeared to be for the advantages of a *process, not for an article of manufacture,*—but, it was an article of manufacture that was claimed in Margulis '001 as the alleged invention.

14. Margulis' attorney then filed a Supplemental Amendment on June 2, 1955, charging "Chinese" copying of the Margulis hanger by the E. H. Tate Company, and that this was "most persuasive evidence of invention." He said: [10]

"This is supplemental to the amendment filed March 4, 1955.

"Since the filing of the aforesaid amendment, the principal competitor of applicant's assignee, namely the E. H. Tate Co. of Boston, Massachusetts, has come out with a new wall hanger which is substantially a Chinese copy of the wall hanger disclosed in the subject application.

"Applicant is submitting herewith as hereto annexed Exhibit A specimens of the new 'Dandee' wall hanger made and sold by this competitor. Applicant's competitor has made the hanger shown in hereto annexed Exhibit B for some time, which lead to a law suit in the Eastern District of Pennsylvania.

"The hanger shown in Exhibit B is, of course, an infringement of Margulis patent 2,647,711.

"It is respectfully submitted that the foregoing adoption by applicant's assignee's competition of the hanger of the present invention, notwithstanding prior manufacture of the hanger of patent 2,647,711 is the most persuasive evidence of invention in the subject wall hanger."

Then, in the next Amendment, the attorney said: [11]

"Applicant has now manufactured approximately 300,000,000 picture hangers. The first approximately 100,000,000 of these picture hangers comprised the picture hanger of his patent. Since the invention of the subject picture hanger, applicant has completely abandoned the picture hanger of his patent. Thus, since the subject invention, applicant has made about 200,000,000 of the subject picture hangers. Of even far greater significance is the action of applicant's competition, whom the record reveals first copied the picture hanger of applicant's patent, and then on the advent of the subject picture hanger switched to the subject picture hanger."

The Examiner then allowed the patent.

15. Since the integral flanged eyelet of Margulis '001 performs the same function of swivelly mounting the hook in the metal support bar, as does the separate rivet of the prior Margulis '711, and provides a swivelly mounting in the same manner, the integral flanged eyelet and hook of the patent in suit are the full mechanical equivalents of the separate rivet and hook of prior Margulis '711. The Examiner in granting Margulis '001 overlooked entirely the mechanical equivalency of these parts of the two hangers.

16. Tate has made a hanger embodying the alleged invention of the Margulis ('001) patent in suit. Tate has been engaged in prior litigation in 1955 against the first Margulis patent '711, and *in December 1955 when the prior litigation was settled by the grant of a free non-exclusive license under Margulis*

10. File History, p. 14.

11. Ibid. p. 17.

'711, Tate was making the particular Hanger now charged to infringe the Margulis patent in suit, which was merely a pending application at that time. As soon as Tate learned the Margulis patent in suit had been granted and that its current hanger was charged to infringe, Tate immediately brought the present declaratory judgment suit. Pending the outcome of this litigation, Tate has not been making the hanger of the Margulis patent in suit since shortly after bringing this suit.

17. There is no evidence in plaintiff's case that the Adhesive Cloth Hanger industry has sought, without success, to find a way to combine the hook and swivelling eyelet. Nor was it shown there was a demand in the industry for such a combination. When Margulis perceived there could be an advantage in assembling the parts to make the hook and eyelet in one piece, and hence a reduction in cost of manufacturer, he had only to order the part from the Edwin B. Stimpson Co., who were readily equipped to supply it, and who were already supplying the hook and eyelet in two separate pieces. It required merely changes in dies to form hooks with flanged eyelets—a technique the Stimpson Company was familiar with, having made many kinds of small metal pieces, including hooks with integral eyelets for many years for many purposes. When it was realized there was a slight advantage in the manufacturing process to make the hook and eyelet in one piece, the part was made promptly available to Jiffy by the Stimpson Company.

18. A custom-made machine had to be designed for the manufacturing of the picture hanger of the patent in suit.[12]

19. It required four operators to make the picture hangers of the type disclosed in patent '711 at the rate of eighty per minute, whereas only one-half time of an operator is required to make the picture hangers of the patent in suit at the rate of more than two hundred per minute.[13]

20. It is now possible to mechanize the manufacture of the picture hanger of the patent in suit by the use of automation thereby increasing the speed of production and decreasing the cost of manufacture of same. Under the old method, eighty picture hangers were manufactured per minute with four girls working on the production line. As a result of the new method, the presently used machines produce more than two hundred picture hangers per minute with part-time attendance by one girl.[14]

21. It is easier to manufacture the picture hanger of the patent in suit since fewer steps are required to assemble the same. Also, the integral tubular flange extending from the shank of the hook can be made at the same time as the hook.[15]

22. The picture hanger of the patent in suit is cheaper to manufacture.[16]

23. Defendant further relies for invalidity of the Margulis patent in suit for lack of invention on a number of Lacing Hooks for Use on Shoes as shown in its Book of Prior Art Patents.[17] The lacing hook patents thus relied on show it to be very common and an old practice, 50 to 80 years ago, in making lacing hooks for shoes *to make the hooks with integral flanged eyelets*. The flanged eyelet was used to secure the hook to the shoe so that the shoe could be laced with the usual lacing. Except that these lacing hooks were fixed and did not swivel on the shoe, *they are for a hook having an integral tubular flange* as described in the Margulis patent in suit.

24. Except for Lovell No. 1,393,801 (and one other patent) which shows an envelope fastener, none of the lacing hooks for use on shoes having integral flanged eyelets was cited by the Patent Office during the prosecution of the Margulis patent in suit. *The Examiner thus did not cite the pertinent art of hooks having integral flanged eyelets made in*

12. Tr. 48, 53.

13. Tr. 59.

14. Tr. 18, 38, 58, 59, 60, 67, 79 and 80.

15. Tr. 14, 15, 67 and 79.

16. Tr. 14, 15, 38, 39, 67, 71 and 80.

17. DX. 1.

*one piece, which was the sole claimed novelty for Margulis '001.*

25.  Lack of invention would also appear from the common practice of The Edwin B. Stimpson Co., of Brooklyn, New York, who manufactured small metal parts and stampings including hooks, eyelets, fasteners, hangers and *hooks with integral flanged eyelets in them.* Both plaintiff Jiffy and defendant Tate have bought their supplies of *hooks with separate rivets and hooks with integral flanged eyelets,* as used in their hangers in suit, from The Edwin B. Stimpson Co. The Stimpson Company's practice in this respect is clearly shown in the Stimpson Catalogue No. 90, *published in 1948,* and No. 86, *published in 1939* which shows a large variety of metal stampings which the Stimpson Company has made at least as early as the publication dates of these catalogues.  John Larson, Sales Manager of The Edwin B. Stimpson Company, testified by deposition and described the wide variety of metal stampings including hooks, eyelets, fasteners, hangers, and *hooks with integral flanged eyelets* in them, which have been made by The Edwin B. Stimpson Company for many years and further produced samples of many of them.

26.  As shown by The Edwin B. Stimpson Company practices, it would clearly be within the competence of the ordinary man skilled in the art to use a one-piece hook with integral flanged eyelet for swivelly mounting the hook on a metal support bar in a hanger, instead of using a separate rivet and hook as had previously been used for the same purpose.  Both perform the same function, in the same manner, and one is clearly the full mechanical equivalent of the other.

## Conclusions of Law

1.  The test of invention is whether the subject matter would have been obvious to one skilled in the art to which the invention pertains at the time it was made.

2.  The use of an expedient common to many diverse arts of itself amounts to no more than the exercise of mechanical skill.[18,]

3.  It is not invention to make a part in one piece which has formerly been made in two pieces, where the result and function are the same.[19]

4.  That advantages may accrue to *a procedure of manufacture* by slight changes made *on a product* does not confer *patentability on the product.* Margulis '001 is not a process patent, but is for an article of manufacture, and the advantages in a process of manufacture to integrate two parts into one for ease of assembly in the manufacturing process, do not confer patentability on the article of manufacture, when the integral part functions in the article of manufacture precisely as it did when made in two separate pieces.

5.  Commercial success alone cannot confer patentability on a product where invention is clearly lacking.

6.  There is no invention in merely changing the shape, size, form and thickness of parts of an article without changing its function.

7.  A change only in the form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way, by substantially the same means with better results, is not such invention as will sustain a patent.[20]

8.  Neither is the substitution of an equivalent for one of the parts of an old device invention.[21]

9.  The Margulis patent in suit No. 2,809,001 for Hanger is invalid for lack of invention.

18. L. B. Smith, Inc. v. Hughes, D.C.E.D. Pa., 190 F.Supp. 787; Zephyr American Corp. v. Bates Mfg. Co., 3 Cir., 128 F. 2d 380.

19. Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 236 F.2d 225.

20. Smith v. Nichols, 1874, 21 Wall. 112, 22 L.Ed. 566.

21. Ranco, Inc. v. Gwynn, 6 Cir., 127 F.2d 437.